**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 6, et al** | **CASE NO.:** |
| **Plaintiffs,** | **Judge:**<br>**Magistrate Judge:** |
| v. | |
| **WARREN T. SMITH, et al.** | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |
| **Defendants.** | |

Pursuant to Fed. R. Civ. P. 65(a), Plaintiffs International Union of Painters and Allied Trades District Council No. 6 (the "Union"), Jim Sherwood ("Sherwood"), Lee Denney ("Denney"), Chris Naegele ("Naegele"), and Everett Chilson ("Chilson") (collectively referred to as "Plaintiffs") respectfully move this Court for an order of preliminary injunctive relief (1) removing Defendants Smith and Clark as Trustees and fiduciaries of the Southern Ohio Painters Health and Welfare Plan and Trust (the "Fund"); (2) terminating any employment relationships between Defendants Smith and Clark and the Fund; (3) prohibiting Trustees from serving as paid employees of the Fund; (4) prohibiting the expenditure of Fund assets to pay for the personal legal expenses of Trustees; (5) prohibiting Defendants from interfering with the Union's lawful authority to appoint and remove Trustees; and (6) prohibiting Defendants from interfering with the Plaintiff Trustees' ability to exercise their duties as Trustees and fiduciaries of the Fund.

Plaintiffs filed a Verified Complaint against Defendants, all of whom are Trustees for the

Fund, which is a Taft-Hartley Fund established by and funded through collective bargaining agreements between the Union and various employers. The Verified Complaint asserts that Defendants breached their fiduciary duties to the Fund when they refused to accept the Union's removal of certain Union Trustees from their positions, when they refused to accept the Union's appointment of certain individuals to serve as Union Trustees, when they expended Fund assets to pay the personal legal expenses of certain Trustees, and when they hired Trustees to serve as paid employees of the Fund.

Plaintiffs contend that a preliminary injunction is warranted because they have a likelihood of succeeding on the merits, irreparable harm will be caused to Plaintiffs as well as the Fund's participants and beneficiaries if immediate action is not taken, and the public interest supports a preliminary injunction in this situation.

Plaintiffs submit the attached Memorandum in Support which more fully addresses the reasons why a preliminary injunction is warranted and necessary. Plaintiffs also incorporate by reference the Verified Complaint in its entirety to this Motion and attached Memorandum.

Respectfully submitted,

**Paoff, Robinson & Widman, LLC**

*/s/ Diana Robinson*
Diana Robinson (0086642)
Kera L. Paoff (0082674)
405 Madison Ave., Suite 1100
Toledo, Ohio 43604
Ph.: (419) 243-9005
Fax: (419) 243-9404
diana@prwattorneys.com
kera@prwattorneys.com
Attorneys for Plaintiffs

2

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION.

Plaintiff International Union of Painters and Allied Trades District Council No 6 (the "Union") has represented employees in the finishing trades, including painters, drywall finishers, wall coverers, glaziers, glass workers, floor covering installers, sign makers, and display workers in the building and construction industry in Southern Ohio for decades. The Union is an affiliate of the International Union of Painters and Allied Trades (the "IUPAT") and is bound by the IUPAT's Constitution as well as by its own bylaws. As the Business Manager/Secretary-Treasurer, Plaintiff Jim Sherwood ("Sherwood") is an automatic Trustee to the Fund and is vested under both the IUPAT Constitution and the Union's bylaws with the power to remove and appoint Union Trustees to the Fund.

Over the past year, Defendants have refused to accept Sherwood's appointments and removals, have engaged in inappropriate expenditures of Fund assets, have passed Amendments to the Trust Agreement that are in violation of ERISA, have engaged in self-dealing, and have prohibited the properly appointed Union Trustees (Plaintiffs Sherwood, Denney, and Naegely) from exercising their duties as Trustees and fiduciaries of the Fund.

Plaintiffs have attempted on numerous occasions to stop Defendants from continuing their illegal conduct to no avail. Defendants are not just ignoring the Union's right to remove and appoint Union Trustees, but are unlawfully insulating Defendants Smith and Clark from the responsibility of carrying out their fiduciary duties properly, thereby depriving the Union of its ability to monitor Smith and Clark's activities. Such deprivation places the Union in jeopardy of violating its own fiduciary duties as an appointing authority under ERISA.

3

Absent the imposition of a preliminary injunction, the Defendants' conduct will continue to cause the Union as well as the Fund's participants and beneficiaries irreparable harm.

## II. FACTS.

### A. **The Players.**

#### 1. *The Fund.*

The Fund is a multiemployer welfare benefit plan that provides health and welfare benefits to collectively bargained employees represented by Plaintiff Union. It is a Taft-Hartley Fund and, as such, must be jointly administered by a Board of Trustees consisting of an equal number of labor and management trustees. (See Taft-Hartley Act 302(c)(5), 29 U.S.C. 186(c)(5)).

#### 2. *Plaintiffs.*

Plaintiff Union is a labor organization and serves as the appointing authority for the Union Trustees of the Fund. In that capacity, Plaintiff Union is a fiduciary of the Fund. Plaintiff Sherwood is the current Business Manager/Secretary-Treasurer for Plaintiff Union. By virtue of that position, he is a Union Trustee of the Fund. Plaintiff Denney is a Trustee who was properly appointed to the Fund by Plaintiff Sherwood. Denny is also a participant in the Fund and is eligible to receive retiree benefits under the Fund. Plaintiff Naegele is employed by the Union, was properly appointed by Plaintiff Sherwood to serve as a Trustee on the Fund, and is a current participant in the Fund. Plaintiff Everett Chilson ("Chilson") is a current participant in the Fund who is eligible to receive benefits from the Fund.

#### 3. *Defendants.*

Defendant Warren T. Smith ("Smith") is a Union Trustee of the Fund, serving against Plaintiffs' wishes, who has refused to resign from the Fund and who has voted against his own removal. Smith is, and has been for many years, also a paid employee of the Fund, serving as its

Assistant Administrative Manager. As part of his compensation package, Smith and his family receive health care benefits from the Fund at no cost to him or his family members. Defendant Dana Clark ("Clark") is a Union Trustee of the Fund, serving in opposition to Plaintiffs' wishes, who has refused to resign from the Fund and who has voted against his own removal. Clark is also a participant in the Fund and is eligible for retiree benefits. Clark was also recently hired to train under Defendant Smith, with the intention of Clark taking over as Assistant Administrative Manager in January 2024. Defendants Jeremy Turi, Joe Conley, James Eck, Chad Hudepohl, Kyle Young, and Jeff Qvick are Employer Trustees of the Fund

### B. Relevant Language From Governing Documents.

Section 141(a) of the IUPAT Constitution provides in pertinent part that the "Business Manager/Secretary-Treasurer shall be an automatic trustee to any Trust Fund in which the members of the District Council participates and any Trust Fund in which the members of any affiliated Local Union participate; shall appoint (and have the power to remove) all Union Trustees to all Trust Funds of the District Council and all Trust Funds established by Local Unions fully affiliated with the District Council." (See Exhibit A to the Verified Complaint).

Likewise, the Union's Bylaws provide nearly identical language: "The Business Manager/Secretary-Treasurer shall be an automatic trustee to any Trust Fund in which the members of the District Council participate, and to any Trust Fund in which the members of any affiliated Local Union participate, and shall appoint (and have the power to remove) all Union Trustees to all Trust Funds affiliated with the District Council or any Local Union affiliated with the District Council." (See Exhibit B to the Verified Complaint).

Article III, Section 1 of the Trust Agreement provides that there shall be a total of sixteen trustees, eight of whom shall be designated as Employer Trustees and eight of whom shall be

designated as Union Trustees. Article III, Section 1 states in relevant part, "Each Trustee shall serve as such until death, being incapable of acting, resignation, or removal as herein provided. The Trustees shall serve without compensation, but shall be reimbursed for all reasonable and necessary expenses properly and actually incurred by them in the performance of their duties as trustees, including but not limited to, reimbursement for lost wages while attending Trustee meetings or other meetings on behalf of the Trust Fund." (See Exhibit C to the Verified Complaint).

Article III, Section 1 also sets forth the process for the appointment of Trustees. Prior to January 1, 2020, Article III, Section 1 stated as follows regarding the appointment of Union Trustees: "The eight Trustees who are designated as Union Trustees shall be designated pursuant to the Local Union by-laws[1] from the Union whom they are selected from and shall be allocated among the various Unions as follows: Two (2) Trustees selected from Locals 123 and 238; two (2) Trustees selected from Local 249; two (2) Trustees selected from Locals 372, 438, 555, and 1275; one (1) Trustee at Large who shall be the Business Manager/Secretary Treasurer of the International Union of Painters and Allied Trades District Council 6. Should a vacancy occur among the Union Trustees, the Business Manager/Secretary-Treasurer of District Council 6, or his successor, shall nominate a replacement. Such nominee shall become a Trustee by unanimous vote of the remaining Union Trustees who are currently serving on the Board of Trustees." (See Exhibit

---

[1] Plaintiff Union (the International Union of Painters and Allied Trades District Council No. 6) is composed of twenty subordinate Local Unions. Six of the seven Local Unions listed in Article III, Section 3 are the Local Unions within Plaintiff Union that have collective bargaining agreements with employers that provide for contributions to the Fund. Local 438 is a Local Union under the purview of District Council No. 53 and it has a collective bargaining agreement with employers that provides for contributions into the Fund. The language in Article III, Section 3 that states that the Union Trustees "shall be designated pursuant to the Local Union by-laws" is in conflict with the IUPAT Constitution and District Council 6's Bylaws. Local Unions do not have appointment authority under those documents and such authority cannot be created by a Trust Agreement. It is Plaintiff Union's Business Manager/Financial Secretary (Plaintiff Sherwood) alone who has this authority pursuant to the Constitution and Plaintiff Union's Bylaws.

C to the Verified Complaint).

On January 1, 2020, Article III, Section 1 of the Trust Agreement was amended to read as follows: "The eight (8) Trustees who are designated as Union Trustees shall be designated pursuant to the Local Union by-laws from the Union whom they are selected from and shall be allocated among the various Unions as follows: Two (2) Trustees selected from Locals 123 and 238; two (2) Trustees selected from Local 249; two (2) Trustees selected from Local 1275; one (1) Trustee selected from Glaziers and Glassworks Local 387; and one (1) Trustee at Large, who shall be the Business Manager/Secretary-Treasurer of the International Union of Painters and Allied Trades District Council 6. Should a vacancy occur among the Union Trustees, the Business Manager/Secretary-Treasurer of District Council No. 6, or his successor, shall nominate a replacement. Such nominee shall become a Trustee by unanimous vote of the remaining Union Trustees." (See Exhibit C (Amendment No. 1) to the Verified Complaint).

Prior to December 13, 2022, Article III, Section 3 of the Trust Agreement provided: "The Union may terminate, upon request of the District Council 6 Business Manager/Financial Secretary, and for just cause, the designation of any Union Trustee upon a three-quarter (3/4) affirmative vote of the Union Trustees present and voting at the meetings." (See Exhibit C to the Verified Complaint). On December 13, 2022, Defendant Smith recommended amending the Trust Agreement to change the removal language from a three-quarter (3/4) affirmative vote of the Union Trustees present and voting to a three-quarter (3/4) affirmative vote of all Trustees present and voting. (See Exhibit C (Amendment No. 5) to the Verified Complaint).

Article IV, Section 5(f) of the Trust Agreement provides in relevant part that "no part of the corpus or income of the Trust Fund shall be used for or diverted to purposes other than for the exclusive benefit of Employees, retired or terminated Employees, or their beneficiaries." Further,

Article IV, Section 6 (a) provides in relevant part that "no part of the Trust Fund shall be used for the personal expenses, except for reimbursement of the reasonable and necessary expenses actually and properly incurred under specific authority granted by resolution of Trustees." Article IV, Section 13 provides that the "Trustees shall act in such capacity without compensation." (See Exhibit C to the Verified Complaint).

Finally, Article IV, Section 28 provides: "All actions taken by the Trustees in accordance with this Agreement shall be taken with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aim; in accordance with the documents and instruments governing the Plan, to the extent such documents and instruments are consistent with the law; and in accordance with the Act and Code." (See Exhibit C to the Verified Complaint).

**C. Timeline of Events.**

On January 4, 2021, Brian Stanley ("Stanley"), the Business Manager/Secretary-Treasurer of the International Painters and Allied Trades District Council 53, requested to be seated on the Fund as a Union Trustee as the representative from Local 438 to replace his predecessor, Dan Polling. Stanley's request was based on the provision in the IUPAT Constitution that provides the Business Manager/Secretary-Treasurer "shall be an automatic trustee to any Trust Fund in which the members of the District Council participates." In a phone call from Defendant Smith, Stanley was informed that the seat had otherwise been filled.

At a Board of Trustees meeting held on January 28, 2021, Plaintiff Sherwood nominated Plaintiff Naegele to serve as a Union Trustee. The Labor Trustees unanimously approved the appointment. Sherwood then stated that the Trust Agreement provides for two Trustees from Local

8

249 but there was only one Trustee currently serving from that Local. He then nominated David Lay to serve as the other Local 249 Trustee. Defendant Smith responded to the nomination by stating there was no vacancy because he (Smith) and Clark were the Union Trustees from Local 249, but that he (Smith) was on a leave of absence. As a result, there was no vote on the nomination.

Sherwood then questioned how Smith could serve as both a Trustee and as a paid employee of the Fund as the Fund's Assistant Administrative Manager. Sherwood requested a legal review and advice from then legal counsel, Ledbetter Parisi LLC, as to whether an employee of the Fund could also serve as a trustee of the Fund without engaging in a prohibited transaction and self-dealing. To Plaintiffs' knowledge and belief, the Board of Trustees was never provided with a legal opinion in answer to Sherwood's question.

At the next scheduled Board of Trustees meeting on May 11, 2021, Katie Burch with the law firm of Potts-Dupre, Hawkins & Kramer was introduced as new legal counsel for the Fund. To Plaintiffs' knowledge, the Trustees did not: vote to remove the firm of Ledbetter Parisi LLC as legal counsel; delegate authority to Smith or anyone else at that time to remove Ledbetter Parisi LLC as legal counsel or to hire a replacement; distribute a request for proposal for legal services to potential candidates; vote on retaining Potts-Dupre, Hawkins & Kramer or on any resulting fee arrangement; or ratify the decision presumably made by Smith to terminate the Fund's relationship with Ledbetter Parisi LLC and to retain Potts-Dupre, Hawkins & Kramer.

Prior to the change in legal counsel, Smith was not listed on the Roll Call of meeting minutes as a Labor Trustee but was instead listed as the Administrator. It is also Plaintiff's understanding and belief that prior to the change in legal counsel Smith did not vote on matters before the Board of Trustees. Following the change in legal counsel, Smith has been listed on the Roll Call of meeting minutes as a Labor Trustee, has voted on matters before the Board of Trustees

(even on questions that affect him personally), and has continued to serve as and receive payment for his role as Assistant Administrative Manager for the fund.

Sometime between the Board of Trustees meeting held on May 11, 2021 and the meeting held August 24, 2021, then Union Trustee Jason Parr was removed from the Roll Call for the Fund without explanation. He stopped receiving communications from the Fund from that point forward. The Trustees did not discuss or vote on Parr's removal or replacement in contravention of the Trust Agreement.

On March 15, 2022, Smith recommended that a change be made to Article 4, Section 23 of the Trust Agreement to require unanimous consent of the Trustees to merge the Fund as opposed to the then current language which required approval by a three-fourths affirmative vote of all Trustees. The recommended change was voted upon and approved.

On July 29, 2022, legal counsel for the Union requested information/documentation from the Fund regarding the delegation of authority, if any, that was given to Smith as Administrator of the Fund to hire legal counsel, and regarding Smith's compensation as Administrator. The Fund subsequently pointed to meeting minutes from 2019 purportedly demonstrating a delegation of authority to hire legal counsel. However, more than a year had passed between the 2019 meeting minutes and Smith's apparent unilateral decision to terminate Ledbetter Parisi LLC and to hire Potts-Dupree, Hawkins & Kramer. Compensation information was eventually provided to the Union regarding Smith's position as Assistant Administrative Manager, revealing that the Fund pays him a salary of $1,700 per month for no more than 39.5 hours of work per month and that the Fund pays for all of Smith's and his family's healthcare costs incurred as a participant in the Fund (premiums, copays, deductibles, etc.).

On December 13, 2022, Smith recommended amending the Trust Agreement to change the

10

removal language from a three-fourths affirmative vote of the Union Trustees present and voting to a three-fourths affirmative vote of <u>all</u> Trustees present and voting, making it much more difficult for Trustees to be removed from their positions and putting the Fund in jeopardy of losing its status as a Taft-Hartley Fund. The amendment was voted upon and approved.

On December 14, 2022, pursuant to his authority under Section 141 of the Constitution as well as Section 5.2 of the Bylaws, Sherwood sent letters to Defendants Smith and Clark directing them to resign their positions as Union Trustees.

In a letter dated December 19, 2022, Potts-Dupree, Hawkins & Kramer sent a letter to Sherwood in response to the letters sent on December 14, 2022 citing the newly amended Article III, Section 3 of the Trust Agreement and advising Sherwood as follows: "Should you have just cause to remove any Union Trustee, please provide so in writing. Your request for his removal will be presented at the next Trustees meeting in March 2023, and all Trustees present at the meeting shall have an opportunity to vote on the matter."

On January 2, 2023, pursuant to the IUPAT Constitution, Sherwood filed internal charges against Smith and Clark in their capacity as Union members alleging violations of the IUPAT Constitution for their refusal to follow his direction and resign their positions as Union Trustees.

On February 9, 2023, a trial was held in accordance with Sections 262-276 of the Constitution over the internal charges filed against Smith and Clark. The Trial Board sustained the charges and ruled that Smith and Clark should be immediately removed from the Fund, be barred from serving as Trustees on or as employees of any jointly trusteed fund now or in the future, and be prohibited from holding Union office now and in the future.

On February 13, 2023, Smith recommended that the Board of Trustees take the following action via email ballot: "Participants who are retirees no longer need to maintain Union

11

membership to receive coverage in the Welfare Plan." Trustees could vote either to approve or decline the action. The Management Trustees voted yes. Smith and Clark also voted yes even though they had a conflict of interest as they would directly benefit from the change if expelled from the Union as a result of the internal charges filed against them. The three properly appointed Union Trustees voted no.

On February 15, 2023, after Smith and Clark failed to comply with the February 9, 2023 Trial Board Decision, Sherwood filed additional internal union charges against Smith and Clark.

On February 23, 2023, Potts-Dupree Hawkins & Kramer sent an invoice to the Fund for $7,902.90 for 32.8 hours of work spent on defending the internal union charges filed against Smith and Clark by Sherwood. The invoice was paid at the direction of Smith and Turi. The properly appointed Union Trustees were not involved in any discussion over the payment of this invoice or the decision to authorize payment.

On March 17, 2023, Smith resigned his membership in the Union, but was able to continue to receive retiree benefits because of the February 13, 2023 Trust amendment.

On March 21, 2023, Potts-Dupree Hawkins & Kramer sent a cover letter enclosing an invoice for "expenses related to the administrative proceedings of the union-appointed trustees" in the amount of $11,166.90. The invoice was paid at the direction of Smith and Turi. The properly appointed Union Trustees were not involved in any discussion over the payment of this invoice or in the decision to authorize payment.

A Board of Trustees meeting was held on March 23, 2023. At that meeting, Turi made a motion that the Fund pay the legal expenses that were incurred in the defense of the internal charges against Clark and Smith (even though Fund assets had already been used to pay the invoices). Sherwood objected to authorizing such payment, arguing that Fund assets could not be

used for an internal Union issue.[2] Sherwood also noted that Smith and Clark had filed internal charges against him (Sherwood), but the Fund did not offer to, let alone pay, for his legal defense of the charges. Despite Sherwood's concerns, the motion was seconded and voted upon. The properly appointed Union Trustees voted no, but the improperly entrenched Union Trustees (who would directly benefit from the action if passed) along with the Management Trustees voted yes and the motion passed.

Also at the March 23, 2023 meeting, Smith asked for a motion to remove Naegele. Clark made the motion and it was voted upon. The properly appointed Union Trustees voted no, so it did not pass as removal requires three-fourths vote of all Trustees present and voting. Smith then asked for a motion to remove Sherwood as a Union Trustee. Clark made the motion, but the motion was not seconded, and no vote was taken.

On March 30, 2023, Sherwood nominated Alfredo Campos to replace former Union Trustee Joe Cryster. An email ballot vote was held by secret ballot, but it did not pass as the Trust Agreement requires unanimous approval of the Union Trustees. While four of the Union Trustees voted in favor of the nomination, one Union Trustee abstained without explanation, and one Union Trustee voted no without explanation.

On April 7, 2023, Clark resigned his membership in the Union, but was able to continue to receive retiree benefits because of the February 13, 2023 amendment to the Trust Agreement.

On April 17, 2023, the Trial Board heard the charges filed against Smith and Clark alleging

---

[2] It must be noted that attorneys are not typically utilized in the prosecution or defense of charges against union members or officials under the IUPAT Constitution. In fact, Section 264(b) provides in relevant part, "Each party shall have the right to select a member of the Union to act as counsel in the case. The member selected as counsel shall not be a lawyer. If the member is a lawyer he or she shall be ineligible to represent the party charged. The Trial Board may, however, in its discretion, permit the accused to be represented by a lawyer but, when the accused does so, the other side will have the same right. However, it is the intention of this International Union to discourage the appearance of lawyers in these hearings, and court and legal formality shall not control the proceedings." Defendants Smith and Clark could have and should have defended themselves without incurring any legal expenses, just as Plaintiff Sherwood defended himself in the charges filed against him.

violations of Constitution for their failures to comply with the previous Trial Board decision among other things. The Trial Board found both Smith and Clark guilty of violating the Constitution and voted unanimously for the expulsion of Smith and Clark from the IUPAT. Smith and Clark were notified of the decision by letter dated April 24, 2023.

On April 27, 2023, Potts-Dupree Hawkins & Kramer sent a cover letter enclosing an invoice for time spent on "administrative proceedings of the union-appointed trustees" for the month of March 2023 in the amount of $4,949.40. The Fund paid the invoice.

On June 27, 2023, the Board of Trustees held its quarterly meeting. At that meeting, Sherwood asked for the removals of Smith and Clark for cause since they had been expelled from the IUPAT and had engaged in prohibited transactions and self-dealing. Because the recently amended Trust Agreement now requires an affirmative vote of three-fourths of all Trustees to remove a Union Trustee, the motion failed even though the properly appointed Union Trustees all voted in favor of their removal. Smith and Clark did not recuse themselves from the votes and instead voted against their own removals. The Employer Trustees also voted no. Sherwood then nominated two individuals to serve as Union Trustees to fill vacant positions. Because the Trust Agreement requires a unanimous vote of the Union Trustees for a nominee to become a Trustee, the motion failed even though the properly appointed Union Trustees all voted in favor of each of the nominated Trustees. Smith and Clark voted no.

Also, at the meeting on June 27, 2023, a motion was made for Clark to begin shadowing/receiving training from Smith for a six-month period with the intention of Clark taking over the duties and position of Assistant Administrative Manager at the end of that six-month period, except that Smith would continue performing the duties relating to requests for proposals. Smith and Clark did not recuse themselves from the vote and voted in favor of the motion. The

Employer Trustees also voted in favor of the motion. The properly appointed Union Trustees voted against the motion. The compensation arrangement between the Fund and Clark and Smith was not discussed or part of the motion, but it was understood by the properly appointed Union Trustees that Clark and Smith would receive compensation.

On June 29, 2023, Sherwood requested that an election of officers be conducted via email ballot in accordance with the Trust Agreement which provides that the term of office for the Chairman and Secretary/Treasurer shall be one-year commencing July 1 of each year. On the same day, the third-party administrator for the Fund emailed the Trustees asking whether they wanted to vote on the election of officers via email ballot or whether they wanted to table the election of officers until the next in-person meeting, which had been scheduled for September 2023. A vote had not been held as of the date of the filing of the Complaint in this matter.

## III.   LAW AND ARGUMENT.

### A.  Preliminary Injunction Standard.

The right to injunctive relief under ERISA is based on the traditional standards of injunctive relief. "There are no specific procedures under ERISA…which cover the issuance of an injunction." *Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214, 1217 (7th Cir. 1989). A federal court has the authority and discretion pursuant to Fed. R. Civ. P. 65 to grant preliminary injunctive relief.

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981) (internal citations omitted).

    In considering a request for a preliminary injunction, Courts look at four factors:

        1) whether the movant has demonstrated a strong likelihood of success on the merits;
        2) whether the movant would suffer irreparable harm;
        3) whether an injunction would cause substantial harm to others; and
        4) whether the public interest would be served by the issuance of such injunction.

*Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998). "It is important to recognize that the four considerations applicable to preliminary injunction are factors to be balanced and not prerequisites that must be satisfied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.*

    **B. Plaintiffs Have a Likelihood of Success on the Merits.**

    Here, Plaintiffs have a likelihood of success on the merits to satisfy the first factor. To prove likelihood of success, a plaintiff must show only that its chance of prevailing is "better than negligible." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir. 2001).

    Section 3(21)(A) of ERISA, 29 U.S.C. § 1002 (21)(A), provides in relevant part: ". . . a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

    Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1) provides in relevant part: ". . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with care,

16

skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; ..., and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."

ERISA Section 409(a), 29 U.S.C. § 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

"To state a claim for breach of fiduciary duty under ERISA, plaintiffs must plead `(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Svigos v. WheatonSecs., Inc.,* 2018 U.S. Dist. LEXIS 13992 at *15 (N.D. Ill. Jan. 29, 2018) *quoting Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 464 (7th Cir. 2010).

1. *Unlawful Entrenchment*.

Plaintiffs have a strong likelihood of success on the merits on their claim of unlawful entrenchment under ERISA, satisfying the first factor. "[S]everal courts have held that ERISA fiduciaries can violate their duties of loyalty and prudence by entrenching themselves in their positions." *Teamsters Local Union No. 786 v. Blevins*, 2020 U.S. Dist. LEXIS 184704 (N.D. Ill., 2020) (citing *Levy v. Local Union No. 810,* 20 F.3d 516, 519 (2nd Cir. 1994). In *Levy*, the Second Circuit explained that "trust agreements that excessively protect benefit plan trustees from removal violate ERISA's fiduciary mandates because they insulate trustees from responsibility for failure

to carry out their fiduciary duties." Whether trustees are unlawfully entrenched depends on "whether a fund's governing provisions permit the termination of their fiduciaries' services on a reasonably short notice under circumstances so the plan would not become locked into an arrangement that may become disadvantageous to the benefit fund." *Local 553, I.B.T. v. Local 803 Pension Fund*, 409 F. Supp. 3d 255, 257 (S.D.N.Y. 2019).

Here, the following three provisions of the Fund's Trust Agreement violate ERISA because they do not permit the termination of trustees on reasonably short notice: (1) the provision in Article III, Section 1, which provides that trustees shall serve until death, being incapable of acting, resignation, or removal as herein provided; (2) the provision in Article III, Section 1 which provides a nominee of the Business Manager/Secretary-Treasurer only becomes a Trustee "by unanimous vote of the remaining Union Trustees"; and (3) the provision in Article III, Section 3, which conditions the removal of a trustee for cause and only by a vote of three-quarters (3/4) of all of the Trustees.

First, the language providing that each trustee shall serve until death, being incapable of acting, resignation, or removal for limited reasons is tantamount to a lifetime appointment and, as such, violates ERISA. In *Mobile, Alabama-Pensacola, Florida Bldg. & Constr. Trades Council v. Daugherty, 684 F. Supp. 270, 280*, the Southern District Court of Alabama found as follows regarding language in trust agreements similar to the language found in the Fund's Trust Agreement:

> Under either plan (welfare or pension) the trustees are appointed for lifetime tenures absent incapacity resignation or removal for malfeasance, misfeasance or nonfeasance. Based upon the DOL Pension and Welfare Benefits Opinion Letter 85-41A and the deference to be accorded such opinion this Court HOLDS THAT THE WELFARE AND PENSION PLANS' PROVISIONS FOR THE LIFETIME APPOINTMENT TENURES FOR THE TRUSTEES (UNION TRUSTEES AND EMPLOYER TRUSTEES ALIKE) ABSENT INCAPACITY, RESIGNATION OR REMOVAL FOR MALFEASANCE, MISFEASANCE OR NON-

18

FEASANCE ARE CONTRARY TO THE POLICIES OF ERISA AND ARE THUS LEGALLY VOID.

(Emphasis in original) (*See also* Pension & Welfare Benefits Opinion Letter 85-41A, December 5, 1985, Department of Labor; *Teamsters Local No. 145 v. Kuba,* 163, 1066 (D. Conn. 1986) (trust amendment providing each trustee would continue to serve until death, incapacity, or removal only for proper and just cause violates ERISA).

Second, the language in the Fund's Trust Agreement that requires a unanimous vote of the remaining union trustees for the successful appointment of a new union trustee is also unlawfully entrenching as it gives the incumbent union trustees the power to appoint themselves and allows them "to perpetuate themselves and their designees in office." *Masino v. Montelle*, 2005 U.S. Dist. LEXIS 51934, *24 (citing *International Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council of Bricklayers & Allied Craftsmen Joint Benefit Funds ("Hudson Valley II")*, 858 F.Supp. 377, 379 (S.D.N.Y. 1994), in which the court stated that "ERISA trustees do not have the authority to perpetuate themselves in office by self-serving resolutions amending the plans to keep them in control of large sums of money which can be administered as a separate power source without regarding to the wishes of their principals.")

Relying on the unanimous union approval appointment language in the Fund's Trust Agreement, Defendants Smith and Clark have blocked several of Plaintiff Sherwood's nominees to fill vacant positions. In voting against the addition of new trustees, Smith and Clark have retained increased power on the Fund because of the aggregate voting system set forth in Article III, Section 9 of the Trust Agreement. With only five trustees, the votes of Smith and Clark are each worth 1.6 votes. Had Sherwood's nominees become Trustees and eight union trustees were now serving on the Board, Smith and Clark's votes would each be worth only 1 vote. Smith and Clark's invocation of Article III, Section 1 of the Trust Agreement to prevent Sherwood from

19

appointing new union trustees has thus harmed the Defendant Union's ability to meet its fiduciary duties to the Fund.

Finally, the language in Article III, Section 3, which permits removal of a trustee only for just cause and only if three-fourths of all trustees present and voting vote for the removal further unlawfully entrenches the sitting trustees. In *Blevins*, the trustees of four ERISA plans amended their trust agreements to "give the incumbent union trustees the power to appoint and remove themselves." Specifically, the amendments stated, "Any Union Trustee may be removed, with or without cause, at any time by a majority of the remaining Union Trustees...the right to actually remove a Union Trustee lies solely with the other Union Trustees." The amendments further provided, "a successor Union Trustee shall be appointed promptly by the action of the majority of the Union Trustees." Before the amendments, the union's executive board had the power to appoint and remove union trustees. In analyzing whether a preliminary was warranted to remove the union trustees, the Northern District of Illinois determined there was a high likelihood of success on the entrenchment issue, finding "defendants' amendments to the trust agreements overly entrench the union trustees by allowing them to serve indefinite terms, appoint their successors, and restricting their removal to other union trustees."

Additionally, several courts have found that trust agreements that provide trustees can only be removed for cause violate ERISA. In *Local 553, I.B.T. v. Local 803 Pension Fund*, 409 F. Supp. 3d 255, 257, the Southern District of New York found that a "for cause" provision "constitutes unlawful structural entrenchment and thus violates ERISA as a matter of law." "Cause" was defined in that trust agreement as "the failure to attend more than two consecutive meetings unless excused by bona fide medical reasons, or gross dereliction or disregard of fiduciary responsibilities." In *Partenza v Brown*, 14 F.Supp.2d 493 (S.D.N.Y), the court found, "The Trust

Agreement's limitation on the Executive Board's authority to remove Trustees to circumstances rising to the level of 'just cause' further entrenches sitting Trustees by making it exceedingly difficult for the participants' representatives to terminate the Trustees' services."

Here, the removal language in the Trust Agreement both before and after the December 13, 2022 Trust Amendment violates ERISA for several reasons. Both before and after the Amendment, Article III, Section 3 placed and continues to place a "for cause" limit on the Business Manager/Secretary-Treasurer's ability to remove a union trustee. Additionally, prior to the December 13, 2022 Amendment, removal required a three-quarter (3/4) affirmative vote of the Union Trustees present and voting at the meetings, placing the removal authority in the hands of the incumbent union trustees rather than in the hands of the proper appointing authority – Plaintiff Union.

The amended language of Article III, Section 3, conditioning a union trustee's removal upon a three-quarter (3/4) affirmative vote of <u>all</u> trustees, is even more problematic as it places removal authority in the hands of the Management Trustees. In fact, the Amendment was designed to keep the incumbent trustees – namely, Defendants Smith and Clark – in office and in power. Giving management trustees influence over the removal of union trustees thwarts the entire purpose of the Taft-Hartley Act. As explained in *Teamster Local No. 145 v. Kuba*, 631 F. Supp. 1063:

> The Supreme Court has recognized that Congress provided in Section 302(c)(5) for equal representation of employers and employees so that the power of one group would check and balance the power of the other in the administration of employee benefit funds (*See National Labor Relations Board v. Amax Coal Company*, 453 U.S. 322, 330, 101 S. Ct. 2789, 2794, 69 L. Ed. 672 (1981) (observing that "the requirement that employer and employee be equally represented among the trustees of an employee benefit fund prevents any misuse of those funds by union officers who would otherwise have sole control of vast amount of money contributed by the employer"). *See also Associated Contractors v. Laborers International Union*, 559 F.2d 222, 228 (3d Cir. 1977) ("Congress envisioned the conflict of views of

employer and employee [trustees] as a distilling process which would provide safeguards against trust fund corruption").

What is even more alarming about the language in Article III, Section 3, is that it does not require the trustee up for removal to abstain from voting on their own removal. In fact, Defendants Smith and Clark voted against their own removals. Because Defendants Smith and Clark have also blocked the appointment of new Trustees, it is very difficult for them to be removed at their current voting strength.

Because decades long precedent supports a finding that the language discussed above in Article III, Sections 1 and 3 of the Trust Agreement violate ERISA and the LMRA as a matter of law as being overly entrenching, Plaintiffs have a likelihood of succeeding on the merits of their unlawful entrenchment claim, satisfying the first element required for a preliminary injunction.

2. *Prohibited Transactions.*

In addition to there being a strong likelihood that Plaintiffs will succeed on their unlawful entrenchment claims, there is also a strong likelihood that Plaintiffs will succeed on their claims that Defendants have engaged in and are continuing to engage in prohibited transactions. Section 406 of ERISA prohibits certain transactions between plans and parties-in-interest and between plans and fiduciaries. 29 U.S.C. 1106.

Defendants have engaged in the following prohibited transactions: (1) authorizing the use of plan assets to pay the invoices of Potts-Dupree, Hawkins & Kramer for attorneys' fees incurred in defense of the internal union fines lodged against some of the Union Trustees in their capacity as members of Plaintiff Union; (2) entering into an employment agreement with and compensating Defendant Smith for serving as the Fund's Assistant Administrative Manager while also serving as a Trustee.

ERISA Section 406(b), 29 U.S.C. 1106(b) provides that "A fiduciary with respect to a plan shall not – (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." The Sixth Circuit has found this provision to "contain an 'absolute bar against self-dealing.'" *Hi-Lex Controls, Inc. v. Blue Cross Blue Shild of Michigan,* 751 F.3d 740, 750 (6th Cir. 2014) (quoting *Brock v. Hendershott,* 840 F.2d 339, 341 (6th Cir. 1988). As explained by the Northern District of Ohio in *Sec'y of the Dep't of Labor v. United Transp. Union,* 2020 U.S. Dist. LEXIS 124862, *21, 2020 WL 161178 (N.D. Ohio Mar. 30, 2020):

> The purpose of ERISA 406(b) is to "prevent a fiduciary from being put in a position where he has dual loyalties and, therefore he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton,* 57 F.3d 270, 287 (3d Cir. 1995 (citing H.R. Conf. Rep. No. 93-1280, 93rd Cong., 2d Sess. (1974) *reprinted in* 1974 U.S.C.C.A.N. 5038, 5089. The statute "protects beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly susceptible to self-dealing." *Lowen v. Tower Asset Mgmt.* 829 F.2d 1209, 1213, (2d Cir 1987). In addition, "it gives notice to fiduciaries that they must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transactions will benefit the plan." *Id.; see also Wilson v. Perry,* 470 F.Supp. 2d 610 (E.D. Va. 2007) ("Although fiduciaries of a plan and parties with adverse interests [to the plan] may enter into a transaction, they may only do so if the fiduciary is recused from exercising any authority, control, or responsibility in the decision-making process concerning the transaction." (internal citation omitted).

Here, Defendant Smith (and now, Defendant Clark) as both an employee for the Fund and a Trustee on the Fund has dual loyalties. An unavoidable and inherent conflict of interest exists when a paid employee also serves as a trustee. Defendants Smith and Clark (if properly appointed and not improperly entrenched) could serve as either trustees *or* as employees of the Fund, but not

23

as both, especially not when Defendants Smith and Clark have voted on and continue to vote on matters that personally affect them.

It is Plaintiffs' belief that Defendant Smith has been involved in discussions surrounding his compensation package and that he has voted on such matters in the past. Additionally, Plaintiffs know for a fact that both Defendants Smith and Clark voted on the arrangement for Clark to begin shadowing/receiving training from Smith for a six-month period with the intention of Clark taking over the duties and position of Assistant Administrative Manager at the end of that six-month period. Plaintiffs have reason to believe that most of the actions Defendants Smith and Clark have taken over the past two years have been taken to protect their positions on the Board of Trustees and to secure their continued compensation (both pay and benefits) from the Fund. They are acting in their own best interest rather than in the interest of participants and beneficiaries and in direct contravention of the appointing authority's direction.

In *Sec'y of United States Dep't of Labor v. Kavalec*, 2021 U.S. Dist. LEXIS 13346, *10, the Northern District of Ohio found a trustee who also served as the paid administrator of a fund "engaged in conduct likely to violate ERISA 406(b)(1) when he set, approved, and paid his own salary from Fund assets." The court stated further, "An ERISA trustee is absolutely barred from paying himself or herself a salary from Fund assets under ERISA 406(b)(1). It is irrelevant whether it is Defendant Kavalec or Alley Pesto paying himself or herself a salary of administrative work from Fund assets." In accepting payment of Fund assets and voting on matters the outcome of which they have a direct personal interest, Defendants Smith and Clark have engaged in self-dealing prohibited transactions and Plaintiffs have a likelihood of succeeding on the merits.

In addition, Defendants engaged in yet another self-dealing prohibited transaction when they authorized the expenditure of plan assets to pay the personal legal expenses of some of the

24

sitting Union Trustees in defense of internal union charges filed against them under the IUPAT

Constitution in their capacity as members of Plaintiff Union. A total of $24,019.20 had been

expended by the Fund as of the date of the filing of the Verified Complaint. As explained by the

District Court for New Jersey in *Sec'y of Labor v. Doyle*, 500 F. Supp. 3d 309, 319:

> [T]he use of plan assets for any purpose other than (1) to pay benefits; or (2) to pay
> reasonable expenses that are necessary to the administration of the plan constitutes
> a per se breach of the duty of loyalty. *Srein v. Soft Drink Workers Union, Local
> 812*, 93 F.3d 1088, 1097 (2d Cir. 1996); *Martin v. Walton*, 773 F. Supp. 1524, 1527
> (S.D. Fla. 1991) (ERISA § 404(a)(1)(A)) "mandates that the expenditure of plan
> assets must be exclusively for providing benefits and defraying reasonable
> expenses of administering the plan"). The fundamental obligation of a fiduciary in
> discharging his duties is to act with an "eye single" to the interest of a plan's
> participants and beneficiaries. *Fischer v. Philadelphia Electric Co.*, 994 F.2d 130,
> 132 (3d Cir. 1993). This rule of loyalty is designed to deter fiduciaries "from all
> temptation," and "must be enforced with 'uncompromising rigidity.' " *NLRB v.
> Amax Coal Co.*, 453 U.S. 322, 329-30, 101 S. Ct. 2789, 69 L. Ed. 2d 672 (1981).

"The law is well settled that trustees cannot reimburse themselves from the trust estate for

their attorneys fees, unless those fees were incurred in the management and preservation of the

trust estate." *Martin v. Walton*, 773 F. Supp. 1524 (S.D. Fla. 1991). Here, the legal expenses were

not incurred in the management or preservation of the trust estate, but instead were for the direct

benefit of certain Union Trustees, and in no way benefitted participants or beneficiaries of the

Fund. Defendant Smith along with Defendant Turi initially approved the expenditure and

Defendants Smith and Clark later voted in favor of paying the legal expenses. Interestingly, the

Fund only paid the legal expenses incurred in the defense of charges filed by Plaintiff Sherwood

against Defendants Smith and Clark but did not offer to or pay the legal fees incurred by Plaintiff

Sherwood in defense of charges filed against him.

Because existing caselaw supports a finding that the payment of certain Union Trustees'

legal fees constitutes an inappropriate expenditure of fund assets under ERISA and also constitutes

a self-dealing prohibited transaction, Plaintiffs have a likelihood of success on the merits on this

claim as well.

### C. **Plaintiffs will suffer irreparable injury if the injunction is not granted.**

"[T]he second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration*, 511 F.3d at 550.

> 1. *Unlawful Entrenchment*.

Plaintiff Union will suffer irreparable harm if Defendants Smith and Clark are permitted to remain in their current positions against the wishes of Plaintiff Union. As explained in *Blevins*,

> The "continuance of any trustees serving contrary to the wishes…of the appointing authority inherently causes irreparable injury." *Partenza*, 14 F. Supp. 2d at 498. Permitting trustees to remain in their positions without proper authorization would deprive the appointing authority of its "crucial ability to oversee the work of its appointed Trustees and to intervene quickly pursuant to its own fiduciary obligations if it should conclude that a sitting Trustee's actions are not in the best interest of the Funds." *Demopoulous v. Whelan*, No. 17-CV-5823, 2017 WL 4233081, at *3 (S.D.N.Y. Sept. 25, 2017). Confusion as to the identity of the trustee can also engender mismanagement of fund assets and can damage the reputation of a union. *Id.*

Here, Defendants Smith and Clark have refused to resign as Trustees as directed by Plaintiff Sherwood, have voted for Amendments to the Trust Agreement to further entrench themselves in the Fund, have voted against their own removals, and have voted against the nominations made by Plaintiff Sherwood to fill Union Trustee vacancies on the Board. Plaintiff Union as well as the properly appointed Union Trustees (who cannot fulfill their fiduciary obligations to the Fund with Defendants Smith and Clark taking up two spots) will be irreparably harmed if Defendants Smith and Clark are permitted to carry on for any period of time as Union Trustees.

> 2. *Prohibited Transactions*.

Given the Defendants' refusal to abide by the most basic fiduciary standards of conduct,

irreparable harm to the participants and beneficiaries of the Fund is certain unless safeguards are put in place on the expenditure of Fund assets moving forward. Despite it being a clear violation of ERISA, Defendants authorized a significant expenditure of Fund assets to pay the personal legal fees of certain Trustees. Likewise, despite it being a clear violation of ERISA, Defendants have authorized the payment of a salary and benefits to a trustee.

Plan assets are to be used solely for the benefit of participants and beneficiaries of the Fund. Participants and beneficiaries are harmed when money that is supposed to be used to provide health benefits is instead diverted for the benefit of the Fund's fiduciaries. Some of the very people trusted to protect participants have instead harmed, and continue to harm, them. Based on the actions of Defendants over the past several months, if explicit limits are not placed on the Trustees regarding the expenditure of Fund assets, the misuse of Fund assets will likely continue unabated, causing more and more significant financial losses to the Fund.

If Fund assets continue to be used to pay Trustees that are supposedly performing administrative services and if Fund assets continue to be paid to cover Trustees' personal legal expenses, including expenses incurred by Defendants in defense of this case, irreparable harm will be done to the participants and beneficiaries of the Fund. As a result, this factor also weighs in favor of granting a preliminary injunction.

### D. **Others will not be harmed if the preliminary injunction is granted.**

In analyzing the propriety of a preliminary injunction, the court must consider "whether a preliminary injunction would cause substantial harm to others." *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529 (6th Cir. 2017). Here, substantial harm will not come to others as a result of a preliminary injunction; rather, a preliminary injunction is necessary to protect participants and beneficiaries from additional harm. Defendants Smith and Clark may argue that

they will be harmed if they are removed as Trustees from the Fund, but they are currently improperly serving as Trustees in violation of ERISA. They may also argue that they will be harmed financially if they cannot receive compensation from the Fund and if they have to pay for their own legal expenses. While that may be true, as discussed more fully above, payment of compensation to a trustee and payment of trustees' personal legal expenses is impermissible and violates ERISA. The Management Trustees cannot claim they will be harmed by the preliminary injunction as the preliminary injunction simply requires them and the other Defendants to follow the law and prohibits them from entering into additional prohibited transactions.

   E. **The public interest will be served by granting the request for preliminary injunction.**

Finally, prior to granting injunctive relief, the court must consider the public interest in granting such relief. Both Congress and the courts have acknowledged a "public interest in protecting ERISA plans." *Su v. Ascent Constr., Inc.,* 2023 U.S. Dist. LEXIS 114635, *16-17 (citing 29 U.S.C. 1001(a), which states "The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor in affecting the stability of employment and the successfully development of industrial relations…") (*See also Central States, Southeast & Southwest Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.,* 503 F. Supp. 96, 98 (W.D. Mich. 1980).

In *Kavalec*, the Northern District of Ohio found "that a preliminary injunction will advance several important policy objectives of ERISA by protecting plan participants' benefits and preventing the misuse of plan funds, and will thus benefit the public interest." (See also *Johnson*

*v. Couturier*, 572 F.3d 1067, 1082 (6th Cir. 2009). The same can be said here. A preliminary injunction will protect plan participants, will prevent the misuse of plan funds, and will benefit the public interest.

## IV.    CONCLUSION.

Plaintiffs respectfully request that this Court grant its Motion for Preliminary Injunctive Relief and issue an Order:

1.  Removing Defendants Smith and Clark as Trustees and fiduciaries of the Fund;

2.  Terminating any employment relationships between Defendants Smith and Clark and the Fund;

3.  Prohibiting Trustees from serving as paid employees of the Fund;

4.  Prohibiting the expenditure of Fund assets to pay for the personal legal expenses of Trustees;

5.  Prohibiting Defendants from interfering with the Union's lawful authority to appoint and remove Trustees; and

6.  Prohibiting Defendants from interfering with the Plaintiff Trustees' ability to exercise their duties as Trustees and fiduciaries of the Fund.

Respectfully submitted,

PAOFF, ROBINSON & WIDMAN LLC

*/s/ Diana Robinson*
Diana Robinson (0086642)
Kera Paoff (0082674)
405 Madison Ave., Suite 1100
Toledo, Ohio 43604
Phone: (419) 243-9005
Fax: (419) 243-9404
E-mail: Diana@prwattorneys.com
        Kera@prwattorneys.com

## CERTIFICATE OF SERVICE

Plaintiff's Motion for Preliminary Injunctive Relief was mailed along with the Verified

Complaint to the following individuals on August 9, 2023:

WARREN T. SMITH
7420 S. Kessler-Frederick Rd.
West Milton, Ohio 45383

JAMES ECK
1099 Stimmel Road
Columbus, Ohio 43223

DANA CLARK
2866 Red Oak Rd.
Kettering, Ohio 45432

CHAD HUDELPOHL
2203 Fowler Street
Cincinnati, Ohio 4520

JEREMY TURI
3840 Fisher Road
Columbus, Ohio 43228

KYLE YOUNG
691 Greencrest
Waterville, Ohio 43081

JOE CONLEY
4321 Webster
Dayton, Ohio 45414

JEFF QVICK
270 Vermont Avenue
Dayton, Ohio 45404

/s/ *Diana Robinson*
Diana Robinson (0086642)