## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 6., *et al.*,**

**Plaintiffs,**

v.

**WARREN T. SMITH, *et al.*,**

**Defendants.**

Case No. 1:23-cv-502

JUDGE DOUGLAS R. COLE

## <u>OPINION AND ORDER</u>

This case involves a challenge to the way in which the Southern Ohio Painters Health and Welfare Plan and Trust Fund (the Fund) operates. The International Union of Painters and Allied Trades (IUPAT) District Council No. 6 (a subunit of IUPAT, as explained below, which this Court refers to throughout this opinion as the Union) and four Union-appointed trustees of the Fund (Plaintiff Trustees and, collectively with the Union, Plaintiffs) allege that two other Union-appointed trustees (Warren T. Smith and Dana Clark (Union Trustee Defendants)), along with the six employer-appointed trustees (Employer Trustee Defendants and, collectively with Union Trustee Defendants, Defendants) mismanaged the Fund in ways that violate the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1104(a)(1), 1106(b). (Compl., Doc. 1, #16–21). Basically, Plaintiffs claim that the two Union Trustee Defendants coordinated with Employer Trustee Defendants to

change the Fund's rules so that the Union Trustee Defendants could thwart the Union's efforts to remove them, thereby unlawfully "entrenching" those two trustees.

Three motions are now fully briefed and pending: Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 2), Employer Trustee Defendants' Motion to Dismiss (Doc. 23), and the Fund's Motion to Intervene (Doc. 34). For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 2) and **GRANTS** Employer Trustee Defendants' Motion to Dismiss (Doc. 23). Accordingly, it **DISMISSES** all claims against Employer Trustee Defendants **WITHOUT PREJUDICE**. The Court also **GRANTS** the Fund's Motion to Intervene (Doc. 34).

## BACKGROUND

On August 9, 2023, Plaintiffs sued Smith and Clark (Union Trustee Defendants), along with Jeremy Turi, Chad Hudepohl, Joe Conley, Jeff Qvick, James Eck, and Kyle Young (Employer Trustee Defendants), alleging that they breached their fiduciary duties as trustees of the Fund. (Doc. 1, #4). As the Fund is a Taft-Hartley Fund, it is "a collectively bargained for multiemployer plan that is jointly administered and governed by a board of trustees with labor and management equally represented." (*Id.*). Thus, the Labor Management Relations Act, 1947, 29 U.S.C. § 141 *et seq.*, also known as the Taft-Hartley Act, and the Trust Agreement govern its administration.

IUPAT's membership consists of employees in the finishing trades, including painters, drywall finishers, wall covers, etc. (Doc. 2, #312). IUPAT itself is the

umbrella organization. (Doc. 42, #1532). It represents all union members at an international level. (*Id.*). IUPAT, in turn, consists of district councils that represent union members within specific geographic regions. (*Id.*). District Council 6 (Plaintiff Union) represents all IUPAT members in Ohio and those located in portions of neighboring states. (*Id.* at #1532–33). Below district councils, local union chapters cover still-smaller geographic regions. (*Id.* at #1533). Union membership entails membership at all three levels: one's local chapter, the applicable district council, and IUPAT. (*Id.* at #1533–34). In other words, someone who is not a member of IUPAT cannot be a member of any local chapter, nor can someone who is not a member of any local chapter be a member of IUPAT. But retirees remain members of both their local chapter and IUPAT. (*Id.* at #1534).

## A.  The Relevant Players

The cast of characters is as follows: Plaintiff Union is a fiduciary of the Fund, as defined in ERISA § 3(21), 29 U.S.C. § 1002(21). (Doc. 1, #6; Clark and Smith Answer, Doc. 22, #712). Plaintiff Jim Sherwood is the Union's Business Manager/Secretary-Treasurer; he also serves as a Union-appointed trustee of the Fund, which makes him a Fund fiduciary. (Doc. 1, #6; Doc. 22, #712–13). Beyond serving as a Trustee, the IUPAT Constitution § 141(a) and the Union's Bylaws purport to vest him with the Union's power to remove and to appoint Union Trustees to the Fund. (Doc. 1, #8–9). He used that power to appoint Plaintiffs Lee Denney and Chris Naegele as Union Trustees (thus making them Fund fiduciaries). (*Id.* at #6–7; Doc. 22, #713). Denney and Naegele are also both Fund participants. (Doc. 1, #7). In

3

addition, Naegele is also a Union employee. (*Id.*). Finally, Plaintiff Everett Chilson is not a Fund trustee, but he is a Union member and a Fund participant, meaning he is eligible to receive benefits from the Fund. (*Id.*; Doc. 22, #713).

Turning to Defendants, Smith and Clark are Fund employees, fiduciaries, and Union-appointed Fund trustees. (Doc. 1, #7; Doc. 22, #713–14). Or at least the Union originally appointed them as Fund trustees. As this lawsuit shows, they are currently serving as Union-appointed trustees *against* the Union's wishes (and against the wishes of the other Plaintiffs). They are also Fund participants receiving retiree benefits. (Doc. 1, #7; Doc. 22, #713–14).

Finally, Defendants Turi, Conley, Eck, Hudepohl, Young, and Qvick are Employer Trustees of the Fund. (Doc. 1, #7–8; Doc. 22, #714). In other words, the various *employers* that contribute to this multi-employer fund appointed these trustees. But, as trustees, they have fiduciary obligations to the Fund. (Doc. 1, #7–8; Doc. 22, #714).

## B. The Factual Timeline

The timeline of relevant events begins in January 2021. At the time, Defendant Smith, who had retired from the trades but was still a retired Union member, and who had been appointed as a Fund trustee and never removed, was serving as a Fund employee. (Doc. 1, #7, 10; Doc. 22, #713, 716). At a Board meeting that month, Plaintiff Sherwood nominated a new Union Trustee to represent Local 249 (Smith's local) on the Fund. (Doc. 1, #10; Doc. 22, #716; Doc. 43, #1863–64). Smith blocked that nomination by arguing that he (Smith) was already representing Local 249 on the

Board, and was merely on a leave of absence. (Doc. 43, #1862–65). In response, Sherwood requested a legal opinion from the Fund's then-counsel, Ledbetter Parisi LLC (Ledbetter), about whether a person could simultaneously serve as both an employee of the Fund and a Trustee without thereby engaging in an ERISA-prohibited transaction and self-dealing. (Doc. 1, #10; Doc. 22, #716). Ledbetter did not supply an opinion letter on that topic. Rather, at the next Board meeting, in May 2021, Katie Burch, an attorney with Potts-Dupre, Hawkins & Kramer, was introduced as new legal counsel for the Fund. (Doc. 1, #10–11; Doc. 22, #716). So far as the Court knows, Potts-Dupre has not provided an opinion letter on the topic either.

At a subsequent Board meeting in December 2022, Smith recommended changing the removal language in the Trust Agreement that governed the Fund. Specifically, he proposed amending it to require a three-fourths affirmative vote of all present and voting Trustees to remove a seated Trustee (the Removal Amendment). (Doc. 1, #12; Doc. 1-3, #300; Doc. 22, #717). The removal language in the Trust Agreement at the time instead had differentiated between Union Trustees and Employer Trustees. As to the former, it called for three-fourths of the *Union* Trustees present and voting to remove a given Union Trustee. (Doc. 1-3, #267). And as to the latter, it required three-fourths of the *Employer* Trustees present and voting to remove an Employer Trustee. *(Id.* at #267–68). The new language, by contrast, had both Union and Employer Trustees vote on removing any trustee, regardless of

whether the Union or the Employers had appointed that trustee. The Board passed the Removal Amendment. (Doc. 1, #12; Doc. 1-3, #300; Doc. 22, #717, 721).[1]

Sherwood was upset with this turn of events. Accordingly, acting in his capacity as Union Business Manager/Secretary-Treasurer, he directed Smith and Clark, who were Union members (albeit retired Union members), to resign as Union Trustees of the Fund. (Doc. 1, #7, 12; Doc. 22, #713, 717). When they refused to do so, Sherwood filed Union charges against them, which a Union Trial Board sustained in a trial held on February 9, 2023 (the February Trial). (Doc. 1, #12–13; Doc. 22, #717). The February Trial Board also ruled that Smith and Clark should be removed from the Fund and barred from serving as Trustees or holding Union office. (Doc. 1, #12–13; Doc. 22, #717). Smith and Clark say that the February trial was not conducted in accordance with the IUPAT Constitution. (Doc. 22, #717).

Four days after the February Trial, Smith recommended that the Fund approve an action under which retired Fund participants would not be required to maintain Union membership as a precondition to receiving coverage (the Membership Amendment). (Doc. 1, #13; Doc. 22, #717–18). The Membership Amendment passed with the parties' votes matching their alignment here: Employer

---

[1] The factual background in the Complaint says that "[t]he amendment was voted on and approved" without specifying the vote split. (Doc. 1, #12). And the text of the Removal Amendment itself, (Doc. 1-3, #300), does not list the vote breakdown authorizing its adoption. But Count I alleges that "Defendants amended Article III, Section 3 of the Trust Agreement." (Doc. 1, #16). The Court takes that to mean both Union Trustee Defendants and Employer Trustee Defendants voted in favor of the Removal Amendment, while all Plaintiff Trustees voted against it.

Trustees along with Union Trustee Defendants (Smith and Clark) voted yes, while Plaintiff Trustees voted no. (Doc. 1, #13; Doc. 22, #717–18).

Sherwood then filed a second set of internal Union charges against Smith and Clark for noncompliance with the February Trial Board's decision requiring them to resign from the Fund. (Doc. 1, #13; Doc. 22, #718). While that second set of Union charges was pending, Smith and Clark both resigned their Union memberships. (Doc. 1, #13–14; Doc. 22, #718–19). A Union Trial Board then held a trial on the second set of internal Union charges against Smith and Clark on April 17, 2023 (the April Trial). (Doc. 1, #14–15; Doc. 43, #1918). On April 24, it notified Smith and Clark that, their earlier resignations notwithstanding, it was expelling them from the Union. (Doc. 1, #15; Doc. 22, #719–20).

As the internal Union charges played out, the Fund's new law firm, Potts-Dupree, Hawkins & Kramer, was billing the Fund for time spent defending Smith and Clark against those Union charges in Union hearings. The Fund received three invoices: two sent before the March 23, 2023, Board meeting and one sent after that meeting. (Doc. 1, #13, 15; Doc. 22, #718–19, 720). At the March 23 Board meeting, the Board voted to pay the firm's legal fees for defending Smith and Clark against the internal Union charges—again, with Defendants voting yes and Plaintiffs voting no. (Doc. 1, #14; Doc. 22, #719). At that same meeting, Smith unsuccessfully moved to remove both Naegele and Sherwood. (Doc. 1, #14; Doc. 22, #719).

Finally, on June 27, 2023, Sherwood sought to remove Smith and Clark from the Fund for cause. (Doc. 1, #15; Doc. 22, #720). Once again, Plaintiffs voted for the

motion, Defendants voted against it, and, under the terms of the Removal Amendment, the motion failed. (Doc. 1, #15; Doc. 22, #720). At the same meeting, based on Defendants voting in favor and Plaintiffs voting against, the Board passed a motion authorizing Clark to begin shadowing Smith to prepare to become the new Assistant Administrative Manager for the Fund. (Doc. 1, #15–16; Doc. 22, #720). And Sherwood unsuccessfully attempted to nominate two new Union Trustees to replace Smith and Clark on the Fund. (Doc. 1, #15; Doc. 22, #720).

## C. The Legal Timeline

### 1. The Complaint

Based on the events described above, Plaintiffs filed a four-count Complaint. (Doc. 1). Count I alleges that Defendants obstructed the proper Union appointment and removal of Trustees, which allegedly constitutes unlawful entrenchment in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). (Doc. 1, #16–17). Count II seeks a declaratory judgment that the Removal Amendment violates ERISA's anti-entrenchment strictures. (*Id.* at #17–18). Count III alleges that "[i]n authorizing the use of plan assets to pay for Smith [sic] and Clark's personal legal expenses, Defendants violated Section 404(a)(1) of ERISA" because those payments were for Smith's and Clark's personal benefit. (*Id.* at #18–19). And Count IV accuses Smith and Clark of engaging in self-dealing, also in violation of ERISA. (*Id.* at #19–21). In short, Counts I and II focus on claims that the two Union Trustee Defendants are unlawfully entrenched in their positions as Fund trustees. And Counts III and IV focus on their alleged self-dealing at the Fund's expense.

### 2.      The Motion for Preliminary Injunctive Relief

Plaintiffs separately moved for preliminary injunctive relief the same day they

filed the Complaint. That motion seeks the following specified relief during the

pendency of this litigation:

(1)    Removing Defendants Smith and Clark as Trustees and fiduciaries of the Fund;

(2)    Terminating any employment relationships between Defendants Smith and Clark and the Fund;

(3)    Prohibiting Trustees from serving as paid employees of the Fund;

(4)    Prohibiting the expenditure of Fund assets to pay for the personal legal expenses of Trustees;

(5)    Prohibiting Defendants from interfering with the Union's lawful authority to appoint and [to] remove Trustees; and

(6)    Prohibiting Defendants from interfering with the Plaintiff Trustees' ability to exercise their duties as Trustees and fiduciaries of the Fund.

(Doc. 2, #338).

### 3.      The Motion to Dismiss

The two Union Trustee Defendants responded to the Complaint by answering.

(Doc. 22). Employer Trustee Defendants took a different tack. They moved to dismiss

all claims against them. (Doc. 23). In the Motion to Dismiss, they advance five

arguments. First, they assert that amending the Trust is not a fiduciary function, so

the allegations of a breach of fiduciary duty based on voting to amend Trust

Agreement Article III, Section 3 (the Removal Amendment) fail. (*Id*. at #730–31).

Second, they argue that "refusing to recognize a removal and appointment notice is

similarly not a fiduciary act," so the allegations based on not voting to remove Smith

and Clark fail as a matter of law. (*Id*. at #731). Third, they say that Plaintiffs have

not plausibly alleged that the Employer Trustee Defendants violated their duties of prudence under ERISA § 404(a)(1)(B). (*Id.*). Fourth, they maintain that "because Count II cannot plausibly support the notion that simply voting against Plaintiff Sherwood's motion to remove Defendants Smith and Clark was a subordination of beneficiaries' and participants' interests," Plaintiffs' Complaint alleges no breach of fiduciary duties by Employer Trustee Defendants. (*Id.*). And finally, they argue that Plaintiffs' "allegations support that [Clark's and Smith's legal] fees were incurred in furtherance of managing the Trust," which means authorizing the Fund to pay those fees did not violate their fiduciary duties. (*Id.* at #731–32).

Plaintiffs responded (Doc. 25). They contend that (1) "the question of whether the Trustees were acting in a fiduciary capacity or a settlor capacity is irrelevant to Plaintiffs' claims," and (2) in any event, Defendants were acting as fiduciaries when carrying out the acts at issue. (*Id.* at #752–55). Employer Trustee Defendants thereafter replied. (Doc. 26).

### 4. The Preliminary Injunction Hearing

The hearing on the Motion for Preliminary Injunctive Relief (PI Hearing) was originally scheduled for October 27, 2023 (9/1/23 Min. Entry), but the Court rescheduled it for November 13 and 14 after two party-requested continuances (*see* Doc. 21; 9/7/23 Not. Order; Doc. 24; 10/19/23 Not. Order; 11/6/23 Min. Entry). In the intervening time, the parties filed two more motions. First, all Defendants jointly moved to vacate the PI Hearing and to schedule a conference to discuss rescheduling. (Doc. 27). In that motion, they requested a longer hearing, noted that they intended

to present evidence to support an unclean hands defense, and put forth a proposal for mediation. (*Id.* at #783–86). Plaintiffs opposed the motion to vacate and moved to exclude any unclean hands evidence, in which motion they claimed the defense was inapplicable to Plaintiffs' claims and unrelated to the issues for the PI Hearing. (Doc. 28, #789–95; Doc. 29). Defendants responded arguing that the unclean hands defense applies because "Plaintiffs' requests for equitable relief in their Motion for Preliminary Injunctive Relief ('PI Motion') are intertwined with Defendants' unclean hands defense." (Doc. 30, #811).

Following a telephone status conference, the Court denied Defendants' Motion to Vacate. (11/6/23 Not. Order). And before the PI Hearing, the Court also denied Plaintiffs' Motion in Limine. (11/9/23 Not. Order). Then, at the close of the PI Hearing, the Court set a schedule for submission of post-hearing briefs on the Motion for Preliminary Injunctive Relief. (11/15/23 Min. Entry). All parties timely submitted their briefs. (*See* Pls.' Post-Hr'g Br., Doc. 40; Emp. Tr. Defs.' Opp'n, Doc. 46; Union Tr. Defs.' Opp'n, Doc. 47; Pls.' Reply to Emp. Tr. Defs.' Opp'n, Doc. 48; Pls.' Reply to Union Tr. Defs' Opp'n, Doc. 49).

### 5. The Motion to Intervene

One other motion is now fully briefed. Before the PI Hearing, the Fund moved to intervene as a matter of right or, in the alternative, to be granted permissive intervention. (Doc. 34). After the PI Hearing, and after seeking an extension of time, (Doc. 41), which the Court granted, (11/27/23 Not. Order), Plaintiffs opposed the Motion to Intervene, (Doc. 50). They argue that (1) the Fund's Board of Trustees is

already a party, by virtue of 11 of the 13 Trustees' being named parties, (*id.* at #2215–16); (2) the Fund's interests are identical to those of existing parties, so intervention is improper, (*id.* at #2216–18); (3) the Fund is acting with an improper motive and is not authorized to bring claims against Naegele and Sherwood—only to intervene, (*id.* at #2218–20); and (4) "the legitimacy of the Board of Trustees has been called into question" because Smith and Clark continue to serve as Trustees, so "every vote by the Board of Trustees that is not unanimous cannot be relied upon [sic]," (*id.* at #2220).

The Fund, after seeking its own extension of time, (Doc. 51), which the Court likewise granted, (1/9/24 Not. Order), replied, (Doc. 52). It argues that (1) the Fund is not already a party because two trustees are not already in the lawsuit and all trustees who are currently parties "are acting solely in their individual capacities," (*id.* at #2231); (2) its interests are not adequately represented by the existing parties because they are not identical, (*id.* at #2231–32); and (3) the Fund is not acting with improper motives when it seeks intervention, (*id.* at #2232).

The matter is now before the Court on Plaintiffs' Motion for Preliminary Injunctive Relief, Employer Trustee Defendants' Motion to Dismiss, the Fund's Motion to Intervene, and the briefing for all three motions.

## LEGAL STANDARDS

### A.    The Preliminary Injunction Standard

"The party seeking the preliminary injunction bears the burden of justifying such relief." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). When reviewing

motions for preliminary injunctive relief, courts assess "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Id.* "These factors … are to be balanced against each other." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). But "they do not carry equal weight." *Memphis A. Phillip Randolph Inst. v. Hargett*, 478 F. Supp. 3d 699, 703 (M.D. Tenn. 2020). Failing to prove a likelihood of success is usually fatal to obtaining injunctive relief, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000), while failure to show an irreparable injury is always fatal, *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) ("A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury." (cleaned up)).

A movant can show irreparable injury resulting from the denial of a preliminary injunction by arguing that either (1) they will experience a "harm … [that] is not fully compensable by monetary damages" or (2) their "claim is based upon a violation of [their] constitutional rights." *Overstreet*, 305 F.3d at 578. "And to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Memphis A. Phillip Randolph Inst.*, 478 F. Supp. 3d at 703–04.

Whenever material facts relevant to the preliminary injunction are in dispute, a district court must hold an evidentiary hearing. *Certified Restoration Dry Cleaning*

13

*Network, LLC v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007). At such a hearing, the Court may make credibility determinations, *id.*; *Curtis v. Story*, 863 F.2d 47, 1988 WL 125361, *1 (6th Cir. 1988) (Table), and preliminary factual findings, *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). While the movant need not proffer "irrefutable proof" or "prove his case in full at a preliminary injunction hearing" to merit his requested relief, *In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 (6th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), the movant still must furnish sufficient evidence to make "a clear showing" that the balance of factors favors the issuance of a preliminary injunction. *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis omitted). This is because a preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up).

**B. The Motion to Dismiss Standard**

Separately, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the

14

defendant is liable." *Id.* In other words, a plaintiff must provide a "short and plain statement of the claim showing that [he] … is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (citation omitted). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings … However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of

15

public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." (cleaned up)).

## C.     The Motion to Intervene Standard

Finally, Federal Rule of Civil Procedure 24 governs motions to intervene. *Cahoo v. SAS Inst., Inc.*, 71 F.4th 401, 412, 414 (6th Cir. 2023). That rule allows for two types of intervention: intervention as of right and permissive intervention. Fed. R. Civ. P. 24. Rule 24(a) governs intervention as of right. Under that rule, a court "must permit" intervention if the movant (1) has an "unconditional right to intervene" under a federal statute or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Rule 24(b), on the other hand, governs permissive intervention. Under that rule, a court may grant intervenor status to a movant who either (1) has a "conditional right to intervene" under a federal statute or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

Courts within the Sixth Circuit measure requests for intervention as of right under Rule 24(a) against four criteria: "(1) timeliness, (2) the movant's legal interest in the case, (3) impairment of that interest absent intervention, and (4) if the [already existing] parties adequately represent it." *Cahoo*, 71 F.4th at 412. And the timeliness factor can be further broken down into five sub-factors: "(1) the stage of the litigation,

(2) the intervenor's purpose, (3) the length of time that the intervenor knew about her interest, (4) prejudice to the original parties, and (5) unusual circumstances." *Id.*

The intervenor's purpose is proper—satisfying the second timeliness sub-factor—where it is "clear and legitimate." *Salem Pointe Cap., LLC v. BEP Rarity Bay, LLC*, 854 F. App'x 688, 696–97 (6th Cir. 2021) ("In considering this factor, district courts should look to the importance of the legal interests asserted." (cleaned up)). And there is no "established list of additional factors" to consider as part of the fifth timeliness sub-factor—unusual circumstances. *Id.* at 700 (citation omitted). Finally, determining whether the applicant has a substantial legal interest in the case—the second factor for intervention as of right—"is necessarily fact-specific." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (citation omitted). But "the applicant for intervention must have a direct and substantial interest in the litigation, such that it is a real party in interest in the transaction which is the subject of the proceeding." *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 372 (6th Cir. 2014) (cleaned up).

As for permissive intervention, a court may allow any party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

> District courts in this circuit have analyzed this requirement in one of two ways. The first focuses on whether the intervenor's proposed claims and the parties' claims require interpretation of the same documents, statutes, or constitutional provisions. The second involves looking at whether allowing intervention will force the court to resolve issues collateral to the underlying lawsuit.

17

*Qualus Corp. v. Wilson*, No. 1:23-cv-352, 2023 WL 5745438, at *3 (S.D. Ohio Sept. 6, 2023) (citations omitted) (collecting cases). Motions for permissive intervention must be timely. *Cahoo*, 71 F.4th at 414. Additionally, "[g]ranting a motion for permissive intervention is discretionary, not compulsory." *Qualus Corp.*, 2023 WL 5745438, at *2. And "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## LAW AND ANALYSIS

The Court begins by discussing the Motion for Preliminary Injunctive Relief, then turns to the Motion to Dismiss, followed by the Motion to Intervene. As a preview, the Court denies the Motion for Preliminary Injunctive Relief because Plaintiffs have not shown that they will suffer an irreparable harm not fully compensable by money damages in the absence of a preliminary injunction. And it grants Employer Trustees Defendants' Motion to Dismiss because (1) these defendants were not acting in a fiduciary capacity when they amended the Trust Agreement, and (2) they did not violate fiduciary duties when voting to reimburse Smith and Clark's legal expenses, as those expenses were not personal legal expenses. Last, the Court grants the Motion to Intervene because the Fund, which is not already a party, has satisfied the requirements for both intervention as of right and permissive intervention.

A.      **The Motion for Preliminary Injunctive Relief**

At the evidentiary hearing, whether Plaintiffs satisfied the irreparable harm prong of the preliminary injunction standard was front and center. And because this action between private parties does not involve any constitutional claims, the irreparable-injury question reduces to whether Plaintiffs have shown they will suffer, without Court intervention, some other kind of harms that are not fully compensable by money damages. *Overstreet*, 305 F.3d at 578. In response to repeated inquiry from the Court at the hearing on this topic, Plaintiffs largely equivocated, providing vague complaints raising potential notions of generalized harms. Giving them the benefit of the doubt, though, the complaints could be understood as falling into three basic categories of allegedly irreparable harm: (1) Defendants have engaged in self-dealing; (2) Plaintiff Trustees' votes are immaterial under the current set-up, so they cannot exercise their fiduciary obligations; and (3) entrenchment is necessarily an irreparable harm in and of itself because the Fund no longer operates as a true Taft-Hartley plan when trustees are entrenched. (Doc. 43, #2007–10). The Court concludes that none of these categories supports the requested preliminary injunction. Let's take them in that order.

At the hearing, Plaintiffs raised concerns that Defendants would continue to vote for their own interests, rather than the Fund's interests, and that doing so may give rise to some sort of future harms that are not compensable by money damages. (*Id.* at #2009–14). But in response to questions from the Court, they could not offer a single example of any potential upcoming vote that might give rise to such harm. (*Id.*). So it remains unclear to the Court why any self-dealing harms Plaintiffs might

19

experience could not be compensable by money damages. If, for example, Smith cannot simultaneously serve as both a Fund trustee and a Fund employee, then presumably the Fund could recover any wages he was wrongfully paid, with interest. And without specific examples of upcoming votes, or indeed even the ability to specify what *kinds* of upcoming votes might be problematic, the Court cannot conclude that non-compensable harms from any future self-dealing by Defendants are "both certain and immediate, not speculative or theoretical." *Memphis A. Phillip Randolph Inst.*, 478 F. Supp. 3d at 703–04. Indeed, Plaintiffs declined even to speculate or to theorize about such future harms. (Doc. 43, #2012 ("It's unpredictable what it is that [Smith is] going to bring forward to the board of trustees.")). And "[p]ast harm … does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). So Plaintiffs' allegations about prior misconduct in their post-hearing briefing, (*see* Doc. 40, #1524), without more, are insufficient to support a claim for injunctive relief. Therefore, the first harm Plaintiffs articulate (without supporting evidence) does not (and cannot) support their Motion for Preliminary Injunctive Relief.

The same analysis applies to Plaintiff Trustees' votes carrying less weight—the second alleged harm. At the hearing, Plaintiffs were similarly unable to articulate any reason why this harm, if it arose, would not be fully compensable by monetary damages. (Doc. 43, #2009–10). And the Court does not see any reason why that harm would not be fully compensable. That is perhaps at least in part because, as was the case with the first claimed harm, Plaintiffs could not point to any upcoming votes

20

where "carrying less weight" would matter. Relatedly, and perhaps even more to the point, the Court has concerns about the tacit suggestions underlying this argument—that Union trustees are expected to vote as a bloc for the Union's interests, as opposed to the Fund's interests, or that the Union's interest in how the Fund operates systematically deviates from the employers' interests. To the contrary, as described more fully below, the Supreme Court has said that, once appointed, an ERISA trustee's duties run *to the Fund*, not to the appointing authority. The notion that Fund votes here will "underweight" Union interests, then, seems (at the very least) in tension with that idea. For all these reasons, the Court concludes that Plaintiff Trustees have not shown that this concern supports their request for a preliminary injunction.

That leaves the third and final alleged harm—entrenchment as a harm in and of itself. Plaintiffs double down on this argument in their post-hearing briefs. (Doc. 40, #1522–25). In support, they cite several cases in which courts found that making it more challenging to remove union trustees constituted an irreparable harm supporting preliminary injunctive relief. (*Id.* at #1522–23).

There are two problems with Plaintiffs' argument on this front. First, some of those cases dealt with scenarios in which it was harder for *anyone* (other than the incumbent union trustees themselves) to appoint and to remove trustees, not situations like the one here, in which it was harder for the appointing Union to remove trustees but easier (at least in some cases) for others to do so. *See Teamsters Loc. Union No. 786 v. Blevins*, No. 19 C 6317, 2020 WL 5909069, at *1, *5 (N.D. Ill.

21

Oct. 6, 2020) ("[T]he defendants adopted amendments to the trust agreements for all four funds, which give the incumbent union trustees the power to appoint and [to] remove themselves."); *Masino v. Montelle*, No. 05-cv-2447, 2005 WL 8159617, at *4 (E.D.N.Y. July 14, 2005) ("Prior to the amendments, the Fund Agreements gave 'the Union' the authority to fill any vacancy in the event of the death, resignation or removal of a Union Trustee. Under the Amended Trust Agreements, the power to appoint new Trustees is conferred on the Union Trustees."), *report and recommendation adopted by* 2005 U.S. Dist. LEXIS 51938 (E.D.N.Y. Aug. 18, 2005). Those cases are not analogous to this case. As the Court pointed out at the PI Hearing, requiring a three-fourths affirmative vote of all Trustees makes removal *easier* in some cases (prior to the amendments, Employer Trustees could not act to remove Union Trustees and vice versa), even though it admittedly reduces the Union's removal power over what it claims are "its" trustees.

That leads to the second, and arguably more important, point—the Court concludes that Plaintiffs have not shown unlawful entrenchment, at least for preliminary injunction purposes. Admittedly, this portion of the analysis bleeds over somewhat from irreparable harm into consideration of the merits, but that consideration is also an important part of the preliminary injunction analysis. So, whether categorized as irreparable harm or likelihood of success on the merits, the Court's concerns on this front weigh against granting preliminary injunctive relief.

So why does the Court conclude that Plaintiffs have failed to establish, at least so far, that the Court should find the Removal Amendment entrenching? Essentially

it boils down to this: Plaintiffs ask this Court to adopt a definition of "entrenchment" under which any provision that imposes different terms for Union Trustee removal from those set forth in the Union's own Constitution—not the *Fund's* trust document, mind you, but the *Union's* Constitution—is unlawful. (*See* Doc. 40, #1523 (arguing that Smith and Clark are unlawfully entrenched because they "are serving … contrary to the IUPAT Constitution")). In other words, according to Plaintiffs the Union Constitution essentially *supersedes* the Trust Agreement that governs the Fund, at least when it comes to appointing or removing Union Trustees. And even more to the point, they claim that, if the Union Constitution provides for at-will removal at the behest of the Union Business Manager/Secretary-Treasurer, then the Fund requiring anything other than such at-will removal violates ERISA. (*See id.* (arguing also that unlawful entrenchment exists as "Smith and Clark are serving contrary to the wishes of [Plaintiff] Sherwood")).

It is difficult for the Court to square this broad understanding of entrenchment with ERISA's underlying mandate, which requires Fund trustees to put *the Fund's* interests over those of whoever appointed them. As the Supreme Court explained,

> although § 302(c)(5)(B) requires an equal balance between trustees appointed by the union and those appointed by the employer, nothing in the language of § 302(c)(5) reveals any congressional intent that a trustee should or may administer a trust fund in the interest of the party that appointed him, or that an [appointing party] may direct or supervise the decisions of a trustee he has appointed.

*NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981). Against that backdrop, Plaintiffs have not satisfactorily explained how at-will removal (and precluding anything other than at-will removal) is consistent with the principles that (1) the Fund Trustees'

23

allegiances to the Fund must be paramount, and (2) the Union should not be able to "direct or [to] supervise the decisions" of Union Trustees. *Id*. Indeed, the Supreme Court has noted in other contexts that at-will removal power is at least correlated with the power to control. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–98, 510 (2010). And this Court struggles to fathom why ERISA's prohibition on "entrenchment" would require Taft-Hartley funds to use governance structures that promote the very effect—appointing parties who control "their" trustees—that the Supreme Court has said ERISA seeks to avoid.

Plaintiffs' only response to this *Amax* argument is to note that the cases on which Plaintiffs are relying were "decided <u>after</u> *Amax* and *Amax* was not even considered in those decisions presumably because *Amax* does not involve the issue of unlawful entrenchment." (Doc. 48, #2200). But neither that answer nor the cases Plaintiffs cite satisfactorily rebut the *Amax* argument. First, just because *Amax* was not specifically addressing entrenchment does not stop it from wholly undercutting the logic on which Plaintiffs' entrenchment argument is based. Second, just because subsequent lower court decisions did not discuss *Amax* does not mean their holdings are not (at a minimum) in tension with *Amax* to the extent those holdings rely on the broad understanding of entrenchment that Plaintiffs urge here. For example, the court in *Demopoulos v. Whelan* concluded that the entrenchment wrought irreparable harm based on the premise that "the Union has lost its crucial ability to oversee the work of its appointed Trustees"—a conclusion that does not easily comport with *Amax's* conception of independent trustees, if it is even reconcilable at all. No. 17-cv-

5823, 2017 WL 4233081, at *3 (S.D.N.Y. Sept. 25, 2017). And *International Union of Bricklayers & Allied Craftsmen Local No. 5. v. Hudson Valley District Council Bricklayers & Allied Craftsmen Joint Benefit Funds* similarly relies on a conception of trustees as subordinate to their appointing authority—a result seemingly directly at odds with *Amax.* 858 F. Supp. 373, 375 (S.D.N.Y. 1994) ("To permit ERISA fund trustees to remain in office contrary to the wishes of … their appointing organization would turn ERISA funds into potentially independent sources of power, contrary to the objectives of both ERISA and §§ 301 and 302 of the Taft–Hartley Act (29 U.S.C. §§ 185, 186)."). If anything, given the tension between these decisions and *Amax*'s underpinnings, the fact that these courts did not discuss *Amax* strikes the Court more as a reason *not* to rely on these cases, than a reason to do so. Finally, the two remaining cases Plaintiffs cite are factually distinguishable. As discussed above, those cases did not adopt the broad notion of entrenchment that Plaintiffs advocate here. Rather, they stand for the more limited proposition that trustees cannot seek to insulate themselves entirely from removal. *See Teamsters Loc. Union No. 786*, 2020 WL 5909069, at *1; *Masino*, 2005 WL 8159617, at *4.

At least for preliminary injunction purposes, then, the Court rejects the argument that ERISA requires, as a matter of law, that Union trustees of Taft-Hartley Funds must be removable at will by a Union officer vested with appointment and removal powers any time a Union Constitution says so to avoid violating ERISA's anti-entrenchment provisions. Accordingly, the Court concludes that Plaintiffs

25

cannot rely on entrenchment here as a per se harm to support a preliminary injunction.

True, Plaintiffs resist the conclusion that they have not shown harm. They say that they "produced evidence that Defendants['] actions have caused harm to participants, and may continue to cause harm to participants, that cannot be remedied with monetary damages." (Doc. 48, #2200). But that blanket statement on its own is unpersuasive. And the examples Plaintiffs give to bolster it—"cut[ting] off certain participants' benefits …, refus[ing] to give credit … for some hours work[ed] and contributions paid, and hir[ing] and fir[ing] services providers and sign[ing] contracts without authority" (*id.*)—all strike the Court as potentially double-edged swords. Cutting off benefits, for example, is admittedly a harm when done wrongly. But terminating benefits *protects* the Fund if the benefits at issue should not be paid. The same is true of crediting hours and contributions. If the Union is correct that the hours and/or contributions should have been credited, that could perhaps support a claim of irreparable harm, as it may be difficult to unscramble the eggs down the road. Once again, though, if Defendants were correct in not crediting hours and/or contributions in those cases, then such conduct protects the Fund. And the Court is simply not in the position to know, based on the paltry record to date, who has the better of any of these factual arguments—vague generalities offered at a 30,000-foot level cannot suffice to provide the requisite context explaining which narrative is more supported. *Cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–57 (2007) (holding that a mere allegation of parallel economic conduct was insufficient to create a

26

reasonable inference of an unlawful agreement in violation of the antitrust laws because it was equally conceivable that the parallel conduct occurred organically in the market absent an antitrust violation). So, Plaintiffs' protestations notwithstanding, the Court concludes that they have not shown they will suffer irreparable injury not compensable by money damages without a preliminary injunction.

A failure to show an irreparable harm dooms a motion for preliminary injunction. *Sumner Cnty. Schs.*, 942 F.3d at 327. And because the Court concludes it must deny the Motion for Preliminary Injunctive Relief on that ground, the Court need not (and thus does not) discuss the other elements of the preliminary injunction standard.[2]

## B.    The Motion to Dismiss

Next, the Court turns to Employer Trustee Defendants' Motion to Dismiss. Recall that Employer Trustee Defendants make five arguments. Three of those arguments respond to Count I of the Complaint: (1) amending the Trust is not a fiduciary function, so any such amendments cannot provide a basis for a breach-of-fiduciary-duty claim, (Doc. 23 at #730–31); (2) "refusing to recognize a removal and

---

[2] That is not to suggest that the Court does not have some additional concerns regarding the preliminary injunction that Plaintiffs request here. For example, as the Supreme Court has noted, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). But rather than preserving the status quo, here Plaintiffs ask the Court to change it, for example by removing two defendants from the board of trustees. Separately, as noted above, one aspect of the Court's analysis of the irreparable harm element leads the Court to believe that Plaintiffs may also have a difficult time on the likelihood of success on the merits prong.

appointment notice is similarly not a fiduciary act," (*id.* at #731); and (3) Plaintiffs have not plausibly alleged that Employer Trustee Defendants violated their duties of prudence, even if they were acting in their fiduciary capacities, (*id.*). The fourth argument is that "Count II cannot plausibly support the notion that simply voting against Plaintiff Sherwood's motion to remove Defendants Smith and Clark was a subordination of beneficiaries' and participants' interests." (*Id.*). And the final argument addresses Count III, in which they argue that Plaintiffs' "allegations support that [Clark's and Smith's legal] fees were incurred in furtherance of managing the Trust." (*Id.* at #731–32). The Court addresses these arguments in order, based on the Count to which each applies.

### 1. Count I

Begin with the arguments related to Count I. "As the Supreme Court has instructed, in every case charging breach of ERISA fiduciary duty, the threshold question is … whether that person was acting *as a fiduciary* (that is, was performing a fiduciary function) when taking the action subject to complaint." *Massaro v. Palladino*, 19 F.4th 197, 211 (2d Cir. 2021) (cleaned up). Here, Employer Trustee Defendants argue that they were not acting as fiduciaries in voting for the Removal Amendment. The Court agrees.

ERISA plan trustees have two hats—settlor and fiduciary—of which they "wear only one at a time." *Id.* at 212. "A person is a fiduciary with respect to a plan to the extent that he exercises any discretionary authority or discretionary control respecting management … of the plan." *Gard v. Blankenburg*, 33 F. App'x 722, 727

(6th Cir. 2002) (cleaned up). In contrast, trustees act in a settlor function when they "make[] a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Id.* at 728 (citation omitted). Accordingly, "trustees of a multi-employer pension benefit plan do not act as fiduciaries under ERISA when they amend, modify, or terminate the plan." *Id.* And that is just as true when trustees amend provisions relating to trustee appointment or removal as it is when they make other amendments to a plan. *Detroit Terrazzo Contractors Ass'n v. Bd. of Trs. of B.A.C. Loc. 32 Ins. Fund*, 71 F. App'x 539, 542 (6th Cir. 2003) (holding that, where an amendment only transferred appointing authority from one sponsoring employer association to another, the amendment "concerned only the composition and design of the plan, [and] it[s adoption] did not implicate the Trustees' fiduciary duties"); *see also Massaro*, 19 F.4th at 213 (holding that trustees "were not acting as fiduciaries when they amended" the appointment and removal provisions of trust documents to require additional qualifications for trustees).

What that means here is that Employer Trustee Defendants were acting as settlors, not fiduciaries, in amending the Trust Agreement. Therefore, no fiduciary duties attached to those actions. So Plaintiffs' argument that Employer Trustee Defendants breached their fiduciary duties by voting for the Removal Amendment is a non-starter.

Plaintiffs rely on cases from outside this Circuit to argue that, although plan amendment is generally a settlor act rather than a fiduciary act, "selecting and

retaining plan administrators" is an exception to that rule. (Doc. 25, #753–54). But that argument does not work. First, the Court has not found—nor has any party cited—any authority suggesting that the Supreme Court or Sixth Circuit has recognized such an exception. So no binding authority compels the Court to agree with Plaintiffs. Second, the cases Plaintiffs cite to support their argument are otherwise unpersuasive. A finding of entrenchment was key to each of those four cases' logic as to why an exception to the general rule applied to the specific entrenching amendments passed. *Teamsters Loc. Union No. 786*, 2020 WL 5909069, at *5–*6; *Levy v. Loc. Union No. 810*, 20 F.3d 516, 519–20 (2d Cir. 1994); *Loc. 553, I.B.T. v. Loc. 803 Pension Fund*, 409 F. Supp. 3d 255, 257, 259 (S.D.N.Y. 2019); *Masino*, 2005 WL 8159617, at *10–*12. But the Court has made no such determination here. And, as discussed above, several of the cases on which Plaintiffs rely are clearly factually distinguishable. So the Court declines to follow the non-binding cases Plaintiffs cite.

Employer Trustee Defendants are similarly ahead on their argument that "the act of refusing to recognize a removal and appointment notice is not a fiduciary act." *Fuchs v. Allen*, 363 F. Supp. 2d 407, 417 (N.D.N.Y. 2005). In *Fuchs*, the Northern District of New York reached this conclusion because it "was a decision pertaining to, at most, the form or structure of the Funds." *Id.* at 418. The Court agrees with that conclusion as it applies here. It is hard to argue that refusing to recognize a removal notice not in accord with the governing Trust documents involves an exercise of discretionary authority over the management of the Fund. That means such refusal

is not a fiduciary function. *Gard*, 33 F. App'x at 727. And because it is not a fiduciary function, there is no attendant fiduciary duty to breach.

Plaintiffs resist this conclusion by arguing that Defendants relied on clearly *unlawful* Trust Agreement provisions that were present here but not in *Fuchs*. (Doc. 25, #754–55 ("The Employer Trustee Defendants' reliance on unlawful Trust Agreement provisions to justify their actions in refusing to vote for Defendant Smith [sic] and Defendant Clark's removals served to further entrench the sitting Trustees. That fact was not present in *Fuchs* and changes the whole analysis.")). But, as discussed above, the Court disagrees, at least for now, that the contested Trust Agreement provisions were clearly unlawful. So that distinction does not work on the record before the Court. Nor does Plaintiffs' argument address the underlying logic of *Fuchs*, which logic the Court finds persuasive as explained above. As a result, the Court concludes that "regardless of whether plaintiff [Sherwood] had the authority to remove and [to] appoint defendant[s] [Smith and Clark] as [] Union Trustee[s] for the [F]und[], the act of refusing to recognize that authority was not fiduciary in nature, and plaintiffs cannot assert breach of fiduciary claims under ERISA based thereon." *Fuchs*, 363 F. Supp. 2d at 418 (footnote omitted). So the Court will dismiss Count I without prejudice as it pertains to Employer Trustee Defendants.

## 2.     Count II

Turning to Count II, as the Court reads the Complaint, this count alleges a breach of the duty of loyalty by relying on the same allegedly unlawful provisions of the Trust Agreement that were the basis for Count I. Two problems with this Count.

First, as detailed above, it is not clear that Employer Trustee Defendants were acting in a fiduciary capacity for purposes of Count II. That Count merely alleges reliance on the allegedly unlawful provisions, but it does not point to specific actions Employer Trustee Defendants took based on that reliance. (Doc. 1, #17–18). That makes it difficult for the Court to determine whether Defendants' actions at issue in Count II constitute an exercise of "discretionary authority," *Gard*, 33 F. App'x at 727—the standard for whether trustees are acting as fiduciaries and therefore subject to fiduciary liability. Second, alleging that Employer Trustee Defendants "merely presided over a plan which failed in some respect to conform to one of ERISA's myriad provisions" and "enforced a flawed plan," without more, is not enough to allege a breach of fiduciary duty. *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541, 2022 WL 407238, at *6–*7 (S.D. Ohio Feb. 10, 2022) (cleaned up). And that is the extent of Plaintiffs' argument as to Employer Trustee Defendants in Count II: Defendants voted to implement unlawful provisions (Count I) and relied on them (Count II). So even assuming Employer Trustee Defendants were acting as fiduciaries for purposes of the conduct at issue in Count II, Plaintiffs' argument still falls short. Accordingly, the Court also dismisses Count II without prejudice as it pertains to Employer Trustee Defendants.

### 3. Count III

Finally, the Court considers Count III, which alleges that Defendants breached their fiduciary duties by voting to authorize payment of Smith's and Clark's legal expenses. (Doc. 1, #18–19). "Nothing in ERISA prohibits a trust from indemnifying

its fiduciaries for legal expenses [they incur as fiduciaries] unrelated to breaches of their duties." *Leigh v. Engle*, 669 F. Supp. 1390, 1414 (N.D. Ill. 1987), *aff'd*, 858 F.2d 361 (7th Cir. 1988). And expending trust funds for "legal … services necessary for the establishment or operation of the plan" is permitted under ERISA § 408. 29 U.S.C. § 1108(b)(2)(A). Both propositions accord with trust law, which informs the interpretation of ERISA. *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996) ("Section 404(a)(1)(A) is included in the fiduciary responsibility provisions of ERISA. *See* 29 U.S.C. §§ 1101–14. The fiduciary responsibility provisions invoke the common law of trusts."); *see also Martin v. Walton*, 773 F. Supp. 1524, 1527 (S.D. Fla. 1991) ("The law is well settled that trustees cannot reimburse themselves from the trust estate for their attorneys['] fees, unless those fees were incurred in the management and preservation of the trust estate." (citation omitted)). Synthesizing those pieces, the question is whether the legal expenses reimbursed and at issue here were for the Fund's benefit, including its "management and preservation," or whether they were for Smith's and Clark's personal benefit. If the former, indemnification is fine; if the latter, not so much.

Plaintiffs contend the reimbursement of legal expenses redounded to Smith and Clark's personal benefit, not the Fund's. (*Id.* at #18–19; Doc. 2, #333–34). Employer Trustee Defendants, on the other hand, say that the Union charges and resulting internal trials aimed to remove Smith and Clark from the Fund for refusing to follow Sherwood's directive to resign, not for any alleged breach of fiduciary duty. (Doc. 23, #741–43). And they continue: "it stands to reason that providing legal advice

33

to sitting Trustees who are defending efforts to remove them as Trustees in a proceeding outside of the parameters of the Trust itself is related to the management of the Trust," so those legal bills were properly paid by the Fund. (*Id.* at #742). Plaintiffs respond that Employer Trustee Defendants' position is internally inconsistent because the result of the Union charges was immaterial to their continued service as Trustees. (Doc. 25, #765).

Employer Trustee Defendants have the better argument here. The stated purpose of the internal Union charges was to force Smith and Clark out of their Trustee positions. (Doc. 1, #12–13, 14–15; Doc. 42, #1643–44, 1650–51). Their continued service as Trustees despite those charges does not change the purpose of the charges. Nor was Smith and Clark's continued service as Trustees a foregone conclusion—one could easily imagine a similar situation playing out differently. So the internal Union charges are fairly construed as efforts to remove Smith and Clark *as Trustees of the Fund*. And legal advice about responding to those charges is thus the functional equivalent of legal advice about Fund-internal removal processes. Therefore, the Court concludes that Potts-Dupre, Hawkins & Kramer's legal fees "were incurred in the management and preservation of the trust estate." *Martin*, 773 F. Supp. at 1527 (citation omitted). Accordingly, it dismisses Count III without prejudice as it pertains to Employer Trustee Defendants.

## C.    The Motion to Intervene

That brings the Court to the Fund's Motion to Intervene. To begin, the Court addresses Plaintiffs' argument that the Fund is already a party. After that, it

considers whether the Fund has satisfied the requirements for intervention as of right, then whether it has satisfied the requirements for permissive intervention.

### 1. The Fund Is Not Already a Party.

Plaintiffs contend that the Motion to Intervene is improper because the Fund is already a party by virtue of 11 of the 13 Trustees being named parties to this suit. (Doc. 50, #2215–16). In support of that proposition, Plaintiffs cite *Mullins v. Prudential Ins. Co. of Am.*, No. 3:09-cv-371-S, 2010 WL 4318851 (W.D. Ky. Oct. 25, 2010). But that case does not say that when a trustee sues for breach of fiduciary duty under ERISA, the real plaintiff is the plan. Nor does *Saramar Aluminum Co. v. Pension Plan for Employees of the Aluminum Industry. and Allied Industries of Youngstown Ohio Metropolitan Area,* 782 F.2d 577 (6th Cir. 1986), which *Mullins* cites. Rather, those cases say that a plan itself can be a fiduciary qualified to bring an ERISA action because it consists of administrators who are fiduciaries. *Saramar Alum. Co.*, 782 F.2d at 581; *Mullins*, 2010 WL 4318851, at *9 ("In accordance with the Sixth Circuit's holding in *Saramar,* this court finds that the GFS Plan is a 'fiduciary' under 29 U.S.C. § 1132(a)(3) and therefore has the standing necessary to bring its counterclaim against Mullins."). In other words, *either* trustees *or* a plan may sue as a fiduciary under ERISA. But trustees and plans are not necessarily legally identical. And while the Sixth Circuit has not spoken on this issue, case law from other circuits expressly contradicts Plaintiffs' argument. *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995) ("[F]iduciaries of an ERISA plan ordinarily may bring an action for breach of fiduciary duty only on behalf of an ERISA covered plan and

not in their individual capacities …. The plaintiff in such actions, however, is not the plan itself but the fiduciary, beneficiary, or participant bringing suit.").

Against that backdrop, the Court concludes that the Fund is not already represented in this lawsuit for four reasons. First, as the Fund points out, Defendant Trustees are responding only to individual claims against them. (Doc. 52, #2231 ("Defendants are involved in this case only to the extent that they are defending themselves as individuals against Plaintiffs' allegations.")). Nowhere in their filings do any of the Defendants purport to be speaking, suing, or defending on behalf of the Fund. Second, as discussed above, Plaintiff Trustees are not legally identical to the Fund just because they are suing as fiduciaries of the Fund. Third, not all Trustees are parties, so at least part of the Board is unrepresented. And because the Court is dismissing Employer Trustee Defendants from this case, as discussed above, that point is even more true than it was when the Fund first filed its Motion to Intervene. Fourth, the stark divide among the Trustees who are parties highlights that none of the trustees who are currently parties unambiguously represent the Fund itself. No matter which side is ultimately vindicated—and neither has been vindicated yet— the ongoing power struggle to speak on behalf of the Fund solidifies this point. In short, Plaintiffs' argument that the Court should deny the Motion to Intervene because the Fund is already represented is not well-taken.

### 2. The Fund Satisfies the Requirements for Intervention as of Right.

Having established that the Fund is not already a party, the Court considers intervention as of right. Begin with timeliness. The Court finds that the Fund's

Motion to Intervene is timely because Intervenor's Motion satisfies all five timeliness sub-factors. First, this case is in its early stages. The Complaint was filed last August, and the case has not progressed far since then. Second, the Fund's purpose—protecting the interests of its participants during this litigation by ensuring all claims for breach of fiduciary duty arising out of these facts are litigated in one action—is "clear and legitimate." *Salem Pointe Cap., LLC*, 854 F. App'x at 697. In fact, the Fund's interest in this case is key to its very nature and purpose. *Id.* at 696 ("In considering this factor, district courts should look to the importance of the legal interests asserted." (cleaned up)). Third, the Fund does not appear to have dragged its feet in filing this Motion once the Complaint was filed. The Fund asserts that the Board voted to move to intervene "as soon as practicable at its first meeting following the filing of the Complaint." (Doc. 34, #1054). Fourth, the Court sees no prejudice to the original parties by allowing the Fund to intervene. All party Trustees were present at the meeting at which the Board voted to intervene, so they have known of the Fund's intent since October. (*Id.*). And no party has suggested another way that allowing the Fund to intervene would prejudice the original parties through delay or additional expense. Nor has any party raised additional factors the Court should consider when evaluating timeliness. So the Court finds that the Motion to Intervene is timely.

The Fund also satisfies the second factor for intervention as of right: its legal interest in the case. As discussed above in the context of timeliness, the Fund's legal interest in this case is integral to its core functions—protecting its beneficiaries by

adjudicating the responsibilities of the Trustees' fiduciary obligations to the Fund. So the Fund has articulated an important and legitimate interest in the case.

Addressing the third factor, the Court finds that the Fund's interest in this litigation will be impaired absent intervention in two ways. First, the Fund is correct to note that this case is likely to work a fundamental change in both the composition of the Board and the administration of the Fund. (Doc. 52, #2232). Whatever the final result, it will directly affect the Fund's ability to serve its members. Second, dragging out unresolved breach of fiduciary duty claims in additional, protracted litigation is not conducive to the effective administration of the Fund. (*See* Doc. 34, #1055–56). Nor is allowing unresolved claims that may result in future cases to hang over the Fund like the Sword of Damocles conducive to its administration. So the Court concludes that the Fund has shown its interest will be impaired absent intervention.

That leaves the last remaining factor: whether the existing parties adequately represent the intervenor's interests. "This burden of proof is minimal because it is sufficient that the movants prove that representation may be inadequate." *Linton ex rel. Arnold v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992). "For example, it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

The Fund meets the standard for much the same reason that the Court determined the Fund is not already a party: none of the existing parties are advocating solely for the Fund's interests. True, "a presumption of adequate

38

representation arises when a putative intervenor shares the same ultimate objective as a party to the suit." *Reliastar Life Ins. Co.*, 565 F. App'x at 373 (cleaned up). But the Fund and Defendants do not share an ultimate objective. Defendants presumably want to avoid personal liability for their conduct; the Fund, by contrast, presumably wants to bring all breach of fiduciary duty claims against all trustees arising from these same facts and have them adjudicated in a single case—both for efficiency's sake and to gain clear guidance on appropriate governance going forward. (*See* Doc. 52, #2232). That is, the Fund is principally concerned with operational *clarity*, rather than liability. So contrary to Plaintiffs' assertions, (Doc. 50, #2216–18), the correct standard is the one cited by the Fund—whether existing parties will make the Fund's arguments and raise its claims.

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987), which Plaintiffs cite to argue otherwise, (Doc. 50, #2216–17), is distinguishable on this basis. *Bradley*, 828 F.2d at 1193 ("It appears evident to us that the present class representatives and proposed intervenors share the same ultimate objective in a unitary school district."). Here, no party has brought, or indicated plans to bring, the proposed counterclaims filed with the Fund's Motion to Intervene. (Doc. 34-1, #1065–68). And as the Fund points out, even if its arguments appear to align with Defendants at this stage, it is possible—perhaps even probable—that they will diverge in the future. (Doc. 34, #1056). So the Court finds that the Fund has met all four factors to intervene as of right.

Plaintiffs resist this conclusion by arguing that "the Proposed Intervenor is acting with improper motive." (Doc. 50, #2218). They make four arguments in favor

of that position. First, they say that "had the Defendant Trustees honestly believed that the Plaintiff Trustees engaged in breaches of their fiduciary duties, they surely would have made such claims prior to Plaintiffs' filing of this lawsuit." (*Id.*). Second, they say Defendants are turning to the Fund's intervention to avoid paying the costs of litigating frivolous claims out of their own pockets. (*Id.* at #2218–19). Third, they say bringing counterclaims is ultra vires because the Board only authorized the Fund to intervene, not to bring counterclaims. (*Id.* at #2219–20). Finally, they say that "[w]hile Defendants Smith and Clark remain on the Board, every vote by the Board of Trustees that is not unanimous cannot be relied upon." (*Id.* at #2220).

None of those arguments work. The first is conclusory and based solely on timing. The Fund has presented a non-sinister explanation for why it did not bring a lawsuit before Plaintiffs filed theirs. (Doc. 52, #2232 ("[T]he parties reviewed the relevant facts after Plaintiffs initiated their own lawsuit against Defendants, and the Fund moved to bring claims in the interest of all of the Plan's participants.")). Given the many plausible reasons one might have for wanting to wait to bring a lawsuit, such as wanting to gather all necessary evidence to assess the scope of the alleged problem, the Court declines to attribute the Fund's Motion to Intervene to ill intent without more evidence.

The second argument is functionally asking the Court to determine that the proposed counterclaims are frivolous while ruling on the Motion to Intervene. The Court declines that invitation, as the claims are not obviously frivolous on their face.

40

The argument that the Fund is acting ultra vires also falls short. Intervenors often bring counterclaims. *Cf. Distillers Co. v. Standard Oil Co.*, 10 Fed. R. Serv. 2d 373, 1964 WL 8167, at *5, *7 (N.D. Ohio 1964) ("Since notices of infringement and threats of suit were lodged against customers of [the intervenor] as well as [the defendant], it should come as no surprise to the plaintiff that [the former] seeks to intervene," which intervention was "for the avowed purpose of interposing a counterclaim of its own against the plaintiff."). And nobody would reasonably expect a Board resolution authorizing intervention to restrict the litigation strategy the Fund was authorized to employ by providing exhaustive details in defining the scope of the authorization. So arguing that a Board vote to authorize intervention did not authorize the Fund to bring counterclaims is unpersuasive.

Plaintiffs' last argument—that non-unanimous Board votes cannot be relied on while the litigation is pending—does not work either. At least for now, the Board remains in place, and it continues to administer the Fund according to the relevant governing documents. The Court will not disregard existing Board governance procedures and prematurely side with Plaintiffs by treating any action not authorized by a unanimous vote as ultra vires.

In short, the Fund has shown that it satisfies all the factors necessary for intervention as of right and Plaintiffs' arguments to the contrary are unpersuasive. So the Court will allow the Fund to intervene.

### 3. The Fund Also Meets the Requirements for Permissive Intervention.

As a final matter, the Court notes that, even if it were not allowing the Fund to intervene as a matter of right, it would allow the Fund to intervene under Rule 24(b), which governs permissive intervention. As discussed above, the Fund is not already a party and the Motion to Intervene is timely.

The Fund's proposed counterclaims also "share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). First, they require interpretation of the same "documents[] [and] statutes"—ERISA and the Fund's governing documents—as the main action. *Qualus Corp.*, 2023 WL 5745438, at *3. Second, adjudicating the Fund's proposed counterclaims will not "force the court to resolve issues collateral to the underlying lawsuit," *id.*, because whether the parties have breached their fiduciary duties goes directly to the claims and counterclaims in the main action.

Last, for the reasons discussed above, the Court concludes that granting the Fund's Motion to Intervene "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Therefore, even were it not granting the Fund's Motion to Intervene under Rule 24(a), the Court would grant the Motion under Rule 24(b).

### CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 2) and **GRANTS** Employer Trustee Defendants' Motion to Dismiss (Doc. 23). Accordingly it **DISMISSES** all claims against Employer

Trustee Defendants **WITHOUT PREJUDICE**. The Court also **GRANTS** the Fund's

Motion to Intervene (Doc. 34).[3]

      **SO ORDERED.**

March 8, 2024
_____              _____
**DATE**                                      **DOUGLAS R. COLE**
                                            **UNITED STATES DISTRICT JUDGE**

---

[3] In the interest of completeness, the Court notes that there is one other motion relating to the issues discussed above, namely Plaintiffs' Motion for Leave to Supplement (Doc. 55). That motion is not yet fully briefed, and the Court hesitates to further delay release of this arguably-already-too-long-delayed opinion seeking preliminary injunctive relief to wait for that briefing to be completed. Moreover, based on the Court's review of the briefing filed to date, it is unlikely that the materials with which Plaintiffs seek to supplement will in any way change this Opinion. They do little to substantiate any claim of irreparable harm, which is the key element on which the Court relies to deny injunctive relief here. And once again, the motion talks about various operational changes at the Fund and amendments to Fund rules. But it is not clear to the Court, based on the information provided to date, whether those changes are harmful or beneficial to the Fund. The Union maintains that the changes are harmful *to the Union*, and that may be the case. But contrary to the underlying premise of that argument, and at the risk of beating a dead horse, under *NLRB v. Amax Coal Co.*, 453 U.S. 322 (1981), Union trustees' duties run to the Fund, not to the Union. But all of that said, the Court will, of course, review the motion once it is fully briefed. And the Court will issue a new opinion if it concludes that any amendment to the current Opinion and Order is warranted.